Leonard STONE, Plaintiff-Appellant,

v.

Herbert S. MILLSTEIN, Leonard P. Knarreborg, Ruth Z. Leshin, Defendants-Appellees.

No. 84–5612.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1986.

Decided Nov. 24, 1986.

---

**15.** The Employees mistakenly argue on appeal that there was no stipulation.

Robert G. Leff, Beverly Hills, Cal., for plaintiff-appellant.

Eugene C. Gratz, Santa Monica, Cal., for defendants-appellees.

Before TANG and BRUNETTI, Circuit Judges, and BURNS,* District Judge.

BRUNETTI, Circuit Judge.

Leonard Stone (Stone) appeals the district court's grant of involuntary dismissal and summary judgment in favor of the appellees. Stone contends, *inter alia,* that appellees breached a fiduciary duty of disclosure and engaged in the fraudulent sale of a security in violation of federal securities laws. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

On August 15, 1958, Stone and appellees, Herbert Millstein, Leonard Knarreborg, and Ruth Leshin (Millstein, Knarreborg, and Leshin), entered into a general partnership agreement. The partnership acquired approximately thirty-two acres in Lompoc, California. A very small portion of the parcel was sold; however, efforts to sell and attempts to develop the remainder of the property were unsuccessful.

Stone wanted to sell the property so long as he could recover his initial investment—approximately $16,000.00. Beginning in 1976, he refused to make any further capital contributions to the partnership. In October 1978, the appellees offered to purchase Stone's interest for approximately $16,000.00, and on October 18, 1978, Stone accepted their offer. On November 14,

---

* The Honorable James M. Burns, District Judge for the District of Oregon, sitting by designation.

1978, Stone informed appellees that his October 18 acceptance was "a firm, not implied, acceptance."

On or about October 4, 1978, a broker, who had listed the property previously, called Knarreborg to determine only if the parcel was still for sale and the terms of sale. On November 17, 1978, Jack Munari (Munari) offered to purchase the property for $370,000.00, and the appellees accepted his offer. The parcel was conveyed to Munari's nominee on or about March 7, 1979. Appellees had informed Stone about Munari's offer on November 30, 1978, and told him he could either take advantage of the offer by remaining a full partner, provided he contributed $10,000.00 in cash which was his partnership share of delinquent real property taxes and a past due promissory note payment (which he had previously refused to pay), or he could sell his partnership interest to appellees. Stone elected to sell his interest to the appellees rather than participate in the partnership sale as he had "neither the resources nor the optimistic enthusiasm to continue in the partnership".

In his original complaint filed in the district court, Stone alleged fraud in the sale of a security under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b) (1986), unjust enrichment, intentional misrepresentation, and breach of a fiduciary duty of disclosure. He sought damages and declaratory relief. On October 1, 1982, the appellees moved to dismiss Stone's allegation of fraud in the sale of a security under Fed.R.Civ.P. 12(b)(6) and to dismiss the remainder of his complaint as time barred under Cal.Civ. Proc.Code § 338(4). On January 3, 1983, the district court granted the appellees' motion only as to the 10b-5 claim.

Stone filed his first amended complaint on January 28, 1983. The case went to trial on December 7, 1983, before the district judge without a jury. Stone completed his opening statement, and immediately thereafter appellees moved for dismissal under Fed.R.Civ.P. 41(b) on the ground

that Stone had failed to show any right to relief. Before ruling on the motion, the district judge extensively questioned the parties on the key issues. The court permitted both parties to argue, among other things: when the contract for sale of Stone's partnership interest was formed, whether the appellees knew or had reason to know before October 18, 1978 (the date appellees claimed the contract was formed) that an offer to buy the partnership property was forthcoming, and to what extent appellees had a fiduciary relationship to Stone after October 18.

The district court had before it all the relevant documentary evidence (approximately five hundred marked exhibits), and the deposition testimony of Munari and the real estate broker, which Stone's counsel relied upon heavily. The parties stipulated to the admissibility of both the documentary evidence and the deposition testimony. The district court also considered the pretrial conference order which set forth the factual issues in dispute. Both Stone and appellees had submitted their trial memorandums to the court and Stone had also submitted his supplemental trial brief. With this information, and after additional questioning of and argument by counsel the next day, December 8, 1983, the district court granted appellees' motion for dismissal under Fed.R.Civ.P. 41(b) and also summary judgment for appellees pursuant to Fed.R.Civ.P. 56(c). Appellees' counsel was asked to prepare findings on both the Fed. R.Civ.P. 41(b) dismissal and the Fed.R. Civ.P. 56(c) summary judgment. On January 10, 1984, the district court entered a judgment granting the 41(b) dismissal and 56(c) summary judgment in favor of appellees.

## II.

## ANALYSIS

### A. *Involuntary Dismissal*

■ Involuntary dismissal under Fed.R. Civ.P. 41(b) "occurs in a bench trial when the trial judge concludes that the plaintiff has not made out a case." *Wilson v. Unit-*

*ed States,* 645 F.2d 728, 730 (9th Cir.1981). The judge is the trier of fact and "may weigh and consider the evidence and sustain defendant's motion though plaintiff's evidence establishes a prima facie case that would have precluded a directed verdict for defendant in a jury case." 5 *Moore's Federal Practice* ¶ 41.13[4] at 41–193 through 94 (2d ed. 1980). *See Southern Arizona York Refrigeration Co. v. Bush Manufacturing Co.,* 331 F.2d 1, 6 (9th Cir.1964).

■ We review the district court's grant of involuntary dismissal under Rule 41(b) the same as "a judgment in defendant's favor following a trial to the court." *Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The district court's findings of fact are reviewed for clear error; questions of law are reviewed *de novo. Id. See also Wilson,* 645 F.2d at 730; *Moore v. City of San Jose,* 615 F.2d 1265, 1273 (9th Cir. 1980).

Whether the district court erred in granting the Rule 41(b) motion after plaintiff's opening statement and after extensive examination by the court of the documentary evidence and argument by counsel, presents a case of first impression in this circuit. Rule 41(b) allows a defendant to move for a dismissal "[a]fter the plaintiff ... has completed the presentation of his evidence...." The First, Third, and Fifth Circuits have held that although a Rule 41(b) motion is not normally granted before the conclusion of plaintiff's case-in-chief, "when it is manifestly clear that plaintiff will not prove his case, granting a Rule 41(b) motion at an earlier time may be permissible." *D.P. Apparel Corp. v. Roadway Express Inc.,* 736 F.2d 1, 3 (1st Cir.1984); *see Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 482 n. 15 (3rd Cir.1979); *Mercado v. Austin Police Department,* 754 F.2d 1266, 1269 (5th Cir. 1985).

### 1. *Contract to Purchase Partnership Interest*

The district court carefully considered the evidence before it and thoroughly questioned counsel. We must accept the lower court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed. *Bohemia, Inc. v. Home Insurance Co.,* 725 F.2d 506, 509 (9th Cir.1984).

The district court found that a contract was formed when Stone accepted appellees' offer to purchase his partnership interest on October 18, 1978. The finding of a completed contract is buttressed by Stone's November 14 letter informing appellees that his October 18 acceptance was a "firm" acceptance and by appellees releasing Stone from his partnership obligations on a mortgage note due December 15, 1978 and for real property taxes due December 10, 1978.

■ Appellant Stone contends that the fact the parties agreed payment would not be made until December 31, 1978 and that he did not sign a release of his partnership interest until December 18, 1978 indicates that his partnership interest did not terminate until after October 18, 1978. The well-established rule in California, however, states that a partnership relationship terminates upon the formation of a contract for the sale of the partnership interest. *Wise Realty Co. v. Stewart,* 169 Cal. 176, 180, 146 P. 534, 538 (1915). The district court properly found that the parties formed a contract for sale of Stone's interest when Stone communicated his acceptance on October 18, 1978. Therefore, Stone's partnership interest terminated on that date.

### 2. *Appellees' Fiduciary Duty*

Stone contends that appellees breached a fiduciary duty of disclosure concerning the sale of the parcel to Mr. Munari. Stone argues that appellees' duty continued until his partnership interest was actually transferred to appellees at the end of December 1978.

This issue involves mixed questions of law and fact which we review *de novo. See United States v. McConney,* 728 F.2d

1195, 1199–1204 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The district court's jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, and California substantive law applies. *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Jurisdiction was originally based on the Rule 10b–5 claim, but when this claim was dismissed diversity of citizenship became the basis for jurisdiction. Under California law, copartners owe a duty of good faith and a fiduciary duty to each other. *Nelson v. Abraham,* 29 Cal.2d 745, 177 P.2d 931 (1947). *See Wind v. Herbert,* 186 Cal. App.2d 276, 8 Cal.Rptr. 817 (1960); Cal. Corp.Code § 15018 (West 1977). In support of his proposition that appellees had a duty of disclosure until the interest was actually transferred to appellees, Stone cites two authorities. In *Estate of Witlin,* 83 Cal.App.3d 167, 147 Cal.Rptr. 723 (1978), the court held that the remaining copartners owed a fiduciary duty to the deceased partner's widow from the date of the management committee's offer until the consummation of the buy-out. 83 Cal. App.3d at 176 & n. 5, 147 Cal.Rptr. at 727 & n. 5. The *Witlin* court concluded that the management committee's fair market valuation of the deceased partner's interest was not made in good faith. 83 Cal.App.3d at 176, 147 Cal.Rptr. at 727. The California Supreme Court in *Laux v. Freed,* 53 Cal.2d 512, 348 P.2d 873, 2 Cal.Rptr. 265 (1960), held that copartners owe a fiduciary duty to one another during the *dissolution* and *liquidation of partnership affairs.* 53 Cal.2d at 517, 348 P.2d at 878, 2 Cal. Rptr. at 270. Both of these cases are inapposite.

The California Supreme Court has held that upon consummation of the sale of a partnership interest, the selling partner's interest and participation in the partnership are terminated. *Wise Realty Co. v. Stewart,* 169 Cal. 176, 180, 146 P. 534, 538 (1915). *See also Vai v. Bank of America National Trust & Savings Ass'n,* 56 Cal.2d 329, 335, 364 P.2d 247, 253, 15 Cal.Rptr. 71, 77 (1961). A contract to purchase Stone's partnership interest was formed on October 18, 1978.

■ The court found that the appellees had not received, nor had they known about, any offers to purchase the partnership property prior to or on October 18, 1978. The appellees did not receive the Munari offer to purchase the property until November 17, 1978. The district court properly concluded that because Stone had sold his partnership interest on October 18, his partnership interest had been terminated on that date and appellees had no duty to inform Stone of the later Munari offer. Moreover, the record shows that Stone was informed about Munari's offer, and Stone elected not to participate in the sale but to sell his partnership interest to appellees.

The district court correctly found that appellees owed no fiduciary duty of disclosure to Stone after October 18, 1978.

### 3. *The Rule 41(b) Motion to Dismiss Was Properly Granted*

■ The district court's findings of fact are supported by the record and are not clearly erroneous. At the trial after appellant presented his opening statement, the district court's extensive questioning and examination of the documentary evidence were sufficient to permit the court to conclude that it was "manifestly clear" appellant could not prove his case. Thus, the court properly granted the Rule 41(b) motion before the conclusion of appellant's case-in-chief.

As the Rule 41(b) motion was properly granted, the alternative ruling for summary judgment under Rule 56 was unnecessary. Since the 41(b) dismissal operates as an adjudication on the merits, appellant Stone was not prejudiced by the alternative ruling under Rule 56.

### B. *Dismissal of Appellant's Rule 10b–5 Claim:*

The district court granted appellees' motion to dismiss Stone's Rule 10b–5 claim for failure to state a claim under Fed.R.Civ.P.

12(b)(6). A Rule 12(b)(6) dismissal is a ruling on a question of law which we review *de novo.* *Guillory v. County of Orange,* 731 F.2d 1379 (9th Cir.1984).

Appellant argues that the district court erred in dismissing his 10b–5 claim because the sale of a general partnership interest is a sale of a security. His claim is without merit. Under the test set forth by the Supreme Court in *SEC v. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), a security is defined as an investment of money in a common scheme or enterprise with the expectation of profits to come solely from the efforts of others, including the promoter or a third party. 328 U.S. at 301, 66 S.Ct. at 1104. *See Landreth Timber Co. v. Landreth,* 471 U.S. 681, 105 S.Ct. 2297, 2305, 85 L.Ed.2d 692 (1985). In this circuit the phrase *"solely* from the efforts of others" has come to mean "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *SEC v. Glenn W. Turner Enterprises,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); see *United States v. Morse,* 785 F.2d 771, 776 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986).

 Stone had an equal partnership interest with the other three partners. He participated fully in the formation of the partnership, the acquisition of the partnership property, and the partnership's management. On several occasions, the partnership formed corporations in connection with ventures to develop the property. As Stone was the partner with the greatest business experience in development, he was the president of these corporations. Although the corporate ventures were unsuccessful, Stone retained the title of "President" in his correspondence for the partnership.

When Stone retired and moved to Hawaii, appellee Knarreborg assumed the position of "President." Yet Stone remained an active investor, keeping in touch with the partnership through extensive correspondence. Therefore, Stone's expectation of profits did not come solely from the efforts of others. The district court properly dismissed the 10b–5 claim.

### III.

### CONCLUSION

The district court properly granted appellees motion for involuntary dismissal under Rule 41(b) and did not err in dismissing Stone's Rule 10b–5 claim.

AFFIRMED.