892 F.2d 1047
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED TOUR AND TRADE (SUDAN) LTD., Plaintiff-Appellee,
v.
VENTURE CAPITAL CONSULTANTS; Harold Saperstein; Harry J.
Heilbroner, Defendants-Appellants.
UNITED TOUR AND TRADE (SUDAN) LTD., Plaintiff-Appellant,
v.
VENTURE CAPITAL, CONSULTANTS; Harold Saperstein; Harry J.
Heilbroner, Defendants-Appellees.
 Nos. 87-6282, 87-6344.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1988.
Decided Oct. 13, 1989.
 
 Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 The central issue in this case involves alleged fraudulent oral promises concerning a contract to supply an essentially worthless letter of intent to issue a bank guarantee. The plaintiff sued on theories of both breach of contract and fraud. The district court granted the plaintiff summary judgment on the contract claim, excluded parol evidence of fraud, and dismissed the fraud claim by directed verdict. We affirm as to the exclusion of parol evidence, and reverse as to the other rulings, and remand for retrial on both the fraud and contract claims.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 UTTCO, a Sudanese corporation, was formed in 1978 by several Sudanese professionals and businessmen to construct a hotel in Khartoum, Sudan. In need of $3.0 million in 1983 to complete the hotel, UTTCO contacted Harold Saperstein, a partner in Venture Capital Consultants ("VenCap"), a California financing corporation. UTTCO officials travelled to VenCap's offices in Encino, California to review a draft of a proposed agreement. The agreement provided that UTTCO would pay VenCap a fee of $150,000 in exchange for VenCap's completing and submitting an application for a $4.5 million loan. The agreement provided that UTTCO would pay $100,000 upon execution of the agreement and $50,000 "upon successful funding of the project." The agreement further provided that the $100,000 was to be refunded should VenCap fail to provide UTTCO with a "Letter of Intent to issue a Bank Guarantee from an International Bank" within 61 banking days.
 
 
 4
 The agreement expressly stated that: (1) VenCap did not guarantee the issuance of the bank guarantee; (2) UTTCO had been informed that any letter of guarantee supplied by VenCap might not be acceptable to a lender; (3) UTTCO was responsible to find a lender; and (4) UTTCO warranted that it was trained, experienced, and sophisticated in business affairs and had consulted outside counsel regarding the agreement. Finally, the agreement provided that it "supersedes all previous agreements, written or oral, between the parties hereto and may be modified only by an agreement in writing, executed by all the parties hereto."
 
 
 5
 After reviewing and discussing the agreement among themselves, UTTCO's officials decided to sign if Saperstein would change it so that the bank guarantee would be by a "first-class international" or "prime international bank." The next day, UTTCO's officials met with Saperstein, who allegedly agreed to add the words "prime international" to the agreement. However, the final copy of the agreement stated only "international" and did not include the word "prime."
 
 
 6
 UTTCO's officials claim that Saperstein told them the written agreement was not binding and that he would obtain a bank guarantee and get the loan himself. In addition, UTTCO alleges that Saperstein told them he would keep the $100,000 in trust and deliver the letter of intent, guarantee, and loan within nine days. UTTCO then gave Saperstein a check for $100,000 and in return received a written trust receipt which stated: "We guarantee to hold these funds in trust" and to refund the same should VenCap did not provide a letter of intent to issue a bank guarantee within 61 banking days.
 
 
 7
 UTTCO signed the agreement on July 19, 1983. On the same day, VenCap deposited UTTCO's $100,000 in VenCap's general bank account. Within two days, VenCap's bank balance dropped below $100,000.
 
 
 8
 In August of 1983, VenCap delivered to UTTCO a letter on the letterhead of Swiss-Arab Bank & Trust Co. (W.I.), Ltd., ("Swiss-Arab Bank") bearing the address of the island of Anguilla, British West Indies. Although entitled a "letter of guarantee," the body of the letter merely stated that Swiss-Arab Bank intended to issue a letter of guarantee for $4.5 million if UTTCO obtained $4.5 million from an approved bank and deposited it in a savings account under the name of Swiss-Arab Bank as collateral for the guarantee. The letter stated that $4.5 million would be available after ten years if an adequate sum of money were placed in a sinking fund account drawing interest for ten years in a bank chosen by the lender and approved by Swiss-Arab Bank.
 
 
 9
 Saperstein then advised UTTCO to use the Swiss-Arab Bank's letter to obtain a loan from UTTCO's banking connections. UTTCO was unsuccessful in its attempts to do so because no lender was willing to give a loan in reliance on Swiss-Arab Bank's "letter of guarantee." VenCap refused UTTCO's subsequent requests that VenCap either obtain the loan or return the $100,000.
 
 
 10
 In January of 1985, UTTCO filed a complaint against VenCap, Saperstein, and Heilbroner for fraud and breach of contract. The court granted summary judgment for UTTCO on its contract claim on the ground that the term "international bank" meant a viable and valid operating bank, and Swiss-Arab was not operating in Anguilla at the time the contract was entered into between the parties.
 
 
 11
 As to the fraud claim, the court ordered UTTCO to submit sworn declarations of witnesses, witness and exhibit lists, trial briefs, exhibits, and excerpts of depositions it intended to offer. The fraud cause of action was tried to the court. On June 23, 1987, the court granted the defendants' motion in limine excluding plaintiff's proffered parol evidence of fraud. After the plaintiff's opening statement and offer of proof, the defendant moved for a directed verdict, which the court granted.
 
 
 12
 Subsequently, UTTCO sought to have the partial summary judgment revised to include prejudgment interest and damages for travel expenses and agents' fees incurred in attempting to obtain the loan and in commencing litigation against VenCap. The court filed a second amended statement of uncontroverted facts and conclusions of law, allowing prejudgment interest and denying damages for travel expenses and agents' fees. On July 30, 1987, a final judgment dismissing the fraud claim by directed verdict was entered.
 
 
 13
 VenCap subsequently filed a notice of appeal of the district court's order granting partial summary judgment on the contract claim in favor of UTTCO. UTTCO also filed a notice of appeal challenging: (1) the court's ruling on defendants' motions in limine; (2) the grant of directed verdict on its fraud claims; and (3) the denial of its claim for damages under the breach of contract claim. The parties' timely appeals were thereafter consolidated by this court.
 
 ANALYSIS
 I. Contract Claim
 
 14
 We review de novo the district court's grant of summary judgment to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 
 15
 The district court concluded that VenCap breached its written contract to provide a letter of intent from an international bank. The district court held as a matter of law that the term "international bank" meant a valid and viable operating bank and that there was no genuine issue of material fact as to whether Swiss-Arab Bank was an operating bank during 1983 and 1984, the period in which the letter of intent was issued.
 
 
 16
 The district court, relying upon the affidavit of Ian Donaldson Mitchell, found that for the relevant period of time Swiss-Arab Bank was not engaged in banking operations in Anguilla, the total stock reportedly issued by the bank consisted of two shares of $10.00 value, and the only shareholders and directors ever reported for the bank were J.G. Fields and Icelma Woodley.
 
 
 17
 While conceding that Swiss-Arab Bank did not conduct business on the island of Anguilla, defendants presented evidence showing that during 1983 and 1984, Swiss-Arab Bank held Anguilla business licenses allowing it to carry on banking business solely with nonresidents of Anguilla. The defendants also presented the declaration of Vincent J. Derudder, the Executive Vice President of Swiss-Arab Bank, stating that Swiss-Arab Bank had substantial operations and branches in various other countries throughout the world; that the records of the Registrar of Companies in Anguilla which showed issuance of shares only to two individuals were incorrect and incomplete because Swiss-Arab's resident representative had failed to report them until 1984; that numerous shares of stock of the bank had been issued to many entities and individuals as of July 1983; and that Swiss-Arab Bank's holdings were between fifteen and seventeen million East Caribbean dollars during the time period in question.
 
 
 18
 A bank such as that described in the Derudder declaration would be capable of issuing the letter of intent required by the parties' written agreement. Accordingly, VenCap has raised a genuine issue of material fact as to whether the terms of the agreement were breached.
 
 
 19
 UTTCO contends that even if Swiss-Arab Bank was a valid and viable operating bank, summary judgment should be affirmed on the ground that Swiss-Arab Bank was not a "first class" or "prime" international bank as the parties allegedly agreed to. Whether the parties actually so agreed is a matter of dispute. In any event, UTTCO has not shown that "first class" or "prime" are terms of art in the banking industry, nor has it presented any other evidence from which it can definitely be concluded as a matter of law that Swiss-Arab Bank was not a "prime" or "first class" international bank within the meaning of those terms as intended by the parties. Accordingly, we decline to affirm the award of summary judgment on this ground.
 
 II. Parol Evidence of Fraud
 
 20
 The district court dismissed the fraud claim by directed verdict after granting VenCap's motion in limine to exclude parol evidence of fraud. UTTCO unsuccessfully sought to present evidence that Saperstein orally promised that: (1) the written agreement would not be binding; (2) VenCap would get a letter of bank guarantee and the loan money itself for UTTCO; and (3) VenCap would obtain the letter of bank guarantee and the loan itself within nine days if UTTCO gave VenCap the $100,000 without insisting upon escrow.
 
 
 21
 We review de novo the district court's interpretation of the California parol evidence rule. See Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1423 (9th Cir.1986). We affirm the district court's ruling that the parol evidence rule barred the introduction of these oral promises which were contrary to the terms of the written agreement.
 
 
 22
 California courts have consistently excluded parol evidence of fraud when it directly contradicts the terms of a written instrument. See Bank of America Nat'l Trust & Savings Ass'n v. Pendergrass, 4 Cal.2d 258, 263, 48 P.2d 659, 661 (1935); Glendale Fed. Savings & Loan Ass'n. v. Marina View Heights Dev. Co., 66 Cal.App.3d 101, 160-161, 135 Cal.Rptr. 802, 837-838 (1977); Kett v. Graeser, 241 Cal.App.2d 571, 574, 50 Cal.Rptr. 727, 730 (1966) (Pendergrass rule applies when the plaintiff sues in tort to recover damages for fraud). Pendergrass and its progeny reason that allowing parol evidence of fraud would enable fraud and perjury to undermine valid written contracts. See Pendergrass, 4 Cal.2d at 263-264, 48 P.2d at 661-662.
 
 
 23
 While Pendergrass has been severely criticized, it is still the governing law in California regarding promissory fraud and the parol evidence rule. See Price v. Wells Fargo Bank, 261 Cal.Rptr. 735 (Cal.App. August 24, 1989) (1989 WL 98058). "The landmark decisions of the 1960s liberalizing the [California] parol evidence rule have only oblique relevance to Pendergrass and cannot be read as overruling the decision. [Citations omitted.] Moreover, despite scholarly criticisms, the decision is based on an entirely defensible decision favoring the policy considerations underlying the parol evidence over those supporting a fraud cause of action." Westlaw op. at 29.
 
 
 24
 The oral promises at issue clearly contradict the terms of the written agreement. Therefore, in accordance with Pendergrass, the district court's ruling excluding parol evidence of fraud which was inconsistent with the written agreement is affirmed.
 
 III. Fraud Absent Parol Evidence
 
 25
 UTTCO contends that even without parol evidence, it could prove that VenCap committed fraud by: (1) contracting to supply a letter of guarantee that it knew was worthless; and (2) falsely promising to keep VenCap's $100,000 in trust until the letter of guarantee was issued. The district court evaluated these claims and dismissed them by directed verdict. We conclude that dismissal was proper as to the former claim, but reverse the grant of directed verdict as to the latter.
 
 
 26
 A motion for directed verdict in a nonjury case will be treated as if it were a motion for involuntary dismissal under Rule 41(b). 9 C. Wright & A. Miller, Federal Practice and Procedure § 2371, at 220 (1981). See also Martin v. E.I. DuPont De Nemours & Co., Inc., 281 F.2d 801, 801-02 & n. 1 (3d Cir.1969). An involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) is viewed as a judgment in defendant's favor following a trial to the court. Stone v. Millstein, 804 F.2d 1434, 1437 (9th Cir.1986). Findings of fact are reviewed under the clearly erroneous standard; questions of law are reviewed de novo. Id.
 
 
 27
 Ordinarily, Rule 41(b) motions are not granted until the plaintiff has completed the presentation of his evidence. See Millstein, 804 F.2d at 1437. However, "when it is manifestly clear that plaintiff will not prove his case, granting a Rule 41(b) motion at an earlier time may be permissible." Id. Here, the district court granted what was in essence a Rule 41(b) motion after plaintiff's opening statement, having considered the parties' trial briefs, the pretrial order, documentary evidence, and deposition testimony.
 
 
 28
 Fraud as to the letter of intent. UTTCO contends that even without evidence of VenCap's alleged oral misrepresentations, the evidence was sufficient to establish that VenCap committed fraud by contracting to supply the letter of intent knowing that the document they would produce would be worthless to obtain a loan. This contention lacks merit.
 
 
 29
 Under California law, the essential elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, 57 Cal.App.3d 104, 109, 128 Cal.Rptr. 901, 905 (1976). This court may affirm the district court on any basis fairly presented by the record. See Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir.1982) (citation omitted).
 
 
 30
 The district court held there was insufficient evidence to establish that VenCap did not intend to keep its promise to supply a valuable letter of guarantee at the time the promise was made. We agree with the district court that there was insufficient evidence to establish an intent to defraud by VenCap at the time the written agreement was executed.
 
 
 31
 UTTCO's proffered evidence included: (1) the declaration of Bradford Cornell that the letter of intent was worthless; and (2) evidence that VenCap had procured letters of intent from Swiss-Arab Bank pursuant to agreements with other clients after its dealings with UTTCO, despite UTTCO's complaints that the letter was worthless.
 
 
 32
 None of this evidence establishes that VenCap intended to defraud UTTCO at the time the written agreement was executed. UTTCO failed to produce any evidence of past acts relevant to the issue of VenCap's intent to defraud. This was the first time VenCap had utilized a Swiss-Arab Bank letter of guarantee. Therefore, even if UTTCO had introduced evidence that VenCap had on an earlier occasion acquired a similar letter of intent from another offshore bank which was later determined to be worthless, this would not establish that VenCap knew Swiss-Arab's letter of intent would likewise be worthless. Finally, the proferred expert testimony that the letter of intent subsequently issued by Swiss-Arab Bank was worthless would be inadequate to establish VenCap's intent to defraud at the time the agreement was executed.
 
 
 33
 On this basis, we affirm the district court's grant of involuntary dismissal because it was "manifestly clear" that UTTCO could not prove its case. See Millstein, 804 F.2d at 1437.
 
 
 34
 Fraudulent promise to keep money in trust. UTTCO contends that it paid VenCap $100,000 and signed the agreement relying in part on VenCap's written trust receipt indicating that the $100,000 would be kept in trust until the letter of intent was issued. It is undisputed that VenCap deposited the money in its own account before obtaining the letter of intent. UTTCO contends this constituted fraud because VenCap never intended to hold the $100,000 in trust. The district court concluded there was no fraud because the misrepresentation caused no damage to UTTCO since VenCap issued the letter of intent within 61 days, as required by the trust receipt. As we concluded earlier, there is a question of fact whether that letter of intent conformed to the contract.
 
 
 35
 Fraud in the inducement requires reasonable reliance on a knowingly false and material representation with resulting damage. Wilke v. Coinway, Inc., 257 Cal.App.2d 126, 64 Cal.Rptr. 845 (1967). Here, the misrepresentation that the money would be held in trust until delivery was material; UTTCO refused to sign the agreement without a trust arrangement. Moreover, the alleged misrepresentation may have damaged UTTCO because, but for the misrepresentation, it would not have parted with $100,000 pursuant to a contract which it now claims has been breached. An appropriate remedy will be fashioned by the trial court if and when UTTCO proves the alleged fraud and any damage it may have suffered. Accordingly, the district court erred in granting summary dismissal on the ground UTTCO was not damaged. We reverse the district court's grant of involuntary dismissal on this claim and remand for further proceedings.
 
 IV. Breach of Contract Damages
 
 36
 UTTCO argues the trial court erred in denying its motion to amend the judgment to include its expenses for travel and agent fees incurred in attempting to obtain a loan with the "letter of guarantee" and in commencing litigation with VenCap. Because the issue of contract damages may arise during the trial, we reverse the district court's determination that such expenses are not recoverable under the contract claim.
 
 
 37
 Damages for "breach of contract are ordinarily confined to those which would naturally arise from the breach or which might have been reasonably contemplated or foreseen by the parties at the time they contracted, as a probable result of the breach." Allen v. Jones, 104 Cal.App.3d 107, 210-11, 163 Cal.Rptr. 445, 447-48 (1980) (citations omitted). The district court resolved the contract claim by summary judgment. Therefore, the parties should be given the opportunity on remand to present evidence as to what was reasonably contemplated or foreseen at the time they entered into the contract.
 
 CONCLUSION
 
 38
 The district court's grant of summary judgment on the contract claim and involuntary dismissal of the claim of fraud in the issuance of the trust receipt are reversed. The case is remanded for trial on the contract and fraud claims.
 
 
 39
 Each party is to bear its own costs on appeal.
 
 
 40
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3