**In re Carolyn D. STEARMAN,
aka Carolyn Stearman
Damato, Debtor.**

**Lucia Prado, Appellant,**

v.

**Carolyn D. Stearman, Appellee.**

**BAP No. NC–00–1228–RRyP.**
**Bankruptcy No. 99–30906–WDM–7.**
**Adversary No. 99–3132 DM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 2000.

Decided Dec. 7, 2000.

Steven Iriki, Law Offices of Mattaniah Eytan, Corte Madera, CA, for Lucia Prado.

Linda L. Mallette, Law Offices of Mallette & Libonati, San Mateo, CA, for Carolyn D. Stearman.

Before: RUSSELL, RYAN, and PERRIS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The appellant loaned $50,000 to the appellee and the appellee's husband, relying on assurances by her accountant and the couple's attorney that they would be able to repay her. These assurances were made in view of a large inheritance the appellee stood to receive before the loan came due. The appellee received the inheritance and gave a portion of it to her husband with the instruction to repay the loan. He did not, however, remit anything to the appellant. After the appellee filed her chapter 7[1] petition, the appellant sought a determination of nondischargeability, pursuant to § 523(a)(2)(A), for the debt arising from the unpaid loan. A bench trial took place and at the conclusion of the appellant's main case, the appellee moved for judgment. She argued that the appellant had failed to establish an intent to deceive on her part. The bankruptcy court found that the appellee lacked such an intent and granted her motion. This appeal followed. We AFFIRM.

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## I. FACTS

Appellee Carolyn Stearman and her husband, Fred Damato, were engaged in the operation of a Burlingame, California restaurant known as Café Trevi. Though they often worked together, Stearman herself had no ownership interest in the restaurant and was otherwise self-employed as a hair stylist. In late 1997, the restaurant encountered financial difficulties, and the couple sought out funds to meet short-term expenses.

Their accountant, George Del Fierro, knew of the restaurant's difficulties and spoke with another client of his, appellant Lucia Prado, about the possibility of making a $50,000 loan to Stearman and Damato. Prado had experience in the restaurant business and Del Fierro arranged an initial meeting between Prado and the couple. The parties met once more and Prado was then given three documents by Damato, all dated November 5, 1997 and prepared by the couple's attorney, Adam Kent. The first was a letter from Kent to Prado stating the following:

> I represent Fred and Carolyn Damato with regard to a number of financial matters. It is my understanding that you have agreed to lend the Damatos the sum of fifty thousand dollars ($50,000), payable within sixty days.
>
> Based upon my personal knowledge of the Damatos' business and financial affairs, it is my understanding that they will have more than sufficient funds with which to pay their debt to you within the next thirty to sixty days.
>
> This is a reflection of my understanding as the Damatos' legal representative, and is not intended to be either a guarantee of their obligation to you or as an inducement for you to enter into this or any other financial transaction with my clients.

The second document was a promissory note, executed by Stearman and Damato, in favor of Prado for $57,000, $7,000 of which was interest. The note was payable in sixty days. The third document Prado received was a deed of trust on Damato's condominium located in San Carlos, California.[2] This instrument was executed by Damato and secured payment of the note.

Prado, whose English proficiency was limited, presented the documents to Del Fierro for his review. Del Fierro explained to Prado the meaning of a trust deed. His explanation strengthened Prado's view of the loan transaction, which had been shaped by Del Fierro's earlier assurances that Stearman and Damato would be able to repay the loan because Stearman was expecting a large inheritance from her mother's estate.[3] Based on Del Fierro's remarks and the above documents, Prado decided to loan $50,000 to Stearman and Damato and delivered to them a cashier's check in this amount in early November 1997.

Stearman was indeed expecting a large inheritance within one or two months from this time. Unbeknownst to Prado, Stearman, represented by Adam Kent, had filed a chapter 13 petition earlier, in July 1997. Her schedules indicated liabilities of $24,647 and assets of $350,000, which represented her expectation interest in her mother's estate. Additionally, they indicated a monthly income of $1,000 and monthly expenses of $875.

In December 1997, Damato filed a chapter 13 petition of his own. Notably, his schedules showed that the condominium used to secure Prado's loan was overencumbered such that the loan was effectively unsecured. The worthless nature of Damato's security had been raised by Kent to Damato at the time Kent prepared the deed of trust. It was not, however, known to Stearman or communicated to Prado,

---

**2.** The condominium was Damato's separate property.

**3.** This expected inheritance formed the basis for Kent's assertion that Stearman and Damato would have "more than sufficient funds" with which to repay Prado.

who discovered it only after Damato filed his petition.

The loan came due in January 1998, but was not repaid. Stearman had received her expected inheritance in late 1997 and soon thereafter distributed a partial amount, $72,000, to her husband with the instruction that the funds be used for repayment. Her husband, however, failed to remit anything to Prado. In April 1999, Stearman having dismissed her chapter 13 case and filed a chapter 7 petition, Prado filed a complaint against her by which she sought a determination of nondischargeability, under § 523(a)(2)(A), for Stearman's debt arising from the unpaid loan.[4] Stearman answered, denying that she had obtained the loan through false pretenses, a false representation, or actual fraud.

A bench trial was held in March 2000 at which the bankruptcy court heard testimony from five witnesses: Stearman and her husband Fred Damato, Adam Kent, Lucia Prado, and George Del Fierro. After Prado concluded her main case, Stearman moved for judgment pursuant to what the court identified as Rule 7052(c). Stearman asserted, *inter alia*, that Prado had failed to establish that she had the intent to deceive. The court heard argument from both parties before announcing its ruling on the motion.

The court initially observed that, though Prado's complaint stated a cause of action under § 523(a)(2)(A), the parties had referred to § 523(a)(2)(B) in their trial briefs. The court viewed this difference as "academic," stating that the critical elements of both sections were "virtually the same." Turning to Stearman's motion, it ruled that Prado had indeed failed to show an intent to deceive on Stearman's part. Based on this failure, the court found that Stearman did not intend to deceive Prado at the time of the loan. It thus granted Stearman's motion and entered judgment

in her favor and against Prado. Prado timely appealed and later filed a motion for a new trial, which the court denied. While the parties address the denial of this motion in their briefs, its propriety is not an issue before us because the order denying the motion was never appealed.

## II. ISSUE

Whether the bankruptcy court erred in finding that Stearman lacked the intent to deceive, thereby granting her motion for judgment at the conclusion of Prado's main case.

## III. STANDARD OF REVIEW

■ We review a finding made under Rule 7052(c) for clear error. *See In re Lund*, 202 B.R. 127, 129 (9th Cir. BAP 1996).

## IV. DISCUSSION

Prado argues on appeal that the bankruptcy court erred in finding that Stearman had no intent to deceive her at the time Stearman and her husband obtained the loan. We disagree.

■ The context for the court's finding was Stearman's motion for judgment under Rule 7052(c). Incorporating Federal Rule of Civil Procedure 52(c), Rule 7052(c) provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact

---

**4.** At the time Prado filed her complaint, she had a similar one pending against Damato, who had filed a chapter 11 petition (later converted to chapter 7) after his chapter 13

case was dismissed in April 1998. Prado prevailed and obtained judgment against Damato in November 1999.

and conclusions of law as required by subdivision (a) of this rule.

On a motion under the rule,

[t]he judge is the trier of fact and "may weigh and consider the evidence and sustain defendant's motion though plaintiff's evidence establishes a prima facie case that would have precluded a directed verdict for defendant in a jury case."

*Stone v. Millstein,* 804 F.2d 1434, 1437 (9th Cir.1986) (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 41.13[4] at 41–193 through 94 (2d ed.1980)).

In *Stone,* the Ninth Circuit was elaborating on that portion of Federal Rule of Civil Procedure 41(b), now replaced by Federal Rule of Civil Procedure 52(c), which permitted a court to dismiss an action after the close of the plaintiff's case-in-chief. *See* FED.R.CIV.P. 52(c) advisory committee's note. The circuit court stated:

We review the district court's grant of involuntary dismissal under Rule 41(b) the same as a "a judgment in defendant's favor following a trial to the court." *Thorne v. City of El Segundo,* 726 F.2d 459, 468 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). The district court's findings of fact are reviewed for clear error; questions of law are reviewed *de novo.*

*Stone,* 804 F.2d at 1437.

■ Thus, the focus is not on whether Prado made a *prima facie* case with respect to Stearman's (alleged) intent to deceive, for even if she had, the court could have still ruled on Stearman's motion as it did. Instead, the focus concerns the court's dispositive finding of fact that Stearman lacked the intent to deceive. It was in view of this finding that the court granted Stearman's motion for judgment.

The following excerpt from the court illuminates its finding:

When [Stearman] signed the note that is in evidence, she had a basis on which to believe that she could pay the debt. She knew that—she intended to pay it. She attempted to pay it. She had the wherewithal to pay it, and none of these facts support a finding that she therefore had an intention to deceive.

Transcript of Trial Proceedings, Mar. 15, 2000, p. 288. Additional remarks by the court also bear mention:

I have many, many cases where people say to me, we intended to pay when they had no basis whatsoever to think they could ever pay, and if [Stearman] did not have a real actual expectancy of inheriting sufficient money, then quite possibly I could accuse her and find that she had—she intended to deceive [Prado].

But the evidence is exactly the reverse. It's a very difficult case for [Prado]. I appreciate that. But it is equally difficult in my mind for [Stearman]. The only thing that [Stearman] didn't do I suspect finally was pay [the] debt after she tried to pay it via her husband. But that does not go to intent to deceive. In fact, it's inconsistent with intent to deceive.

Transcript of Trial Proceedings, Mar. 15, 2000, pp. 288–89.

Indeed, the uncontradicted fact and testimony are that Stearman based her ability to repay Prado on her expected inheritance and she attempted to repay through her husband. Thus, the court did not err in finding that Stearman lacked the intent to deceive Prado.

■ Prado urges otherwise, arguing that the court "completely overlooked the fact that even taking into account [Stearman's] inheritance of approximately $350,000, she and her husband were still insolvent and did not have sufficient funds to pay back all of their creditors, including Ms. Prado." Appellant's Opening Brief, p. 7. She contends that Stearman's chapter 13 case, pending at the time of the loan, her husband's post-loan chapter 13 case, and the worthless deed of trust require an inference of intent to deceive on Stear-

man's part.[5] Prado argued this point at trial, and the court was not persuaded by it. The recitation of it here is nothing more than an improper attempt to relitigate in an appellate forum.

## V. CONCLUSION

The bankruptcy court did not err in finding that Stearman lacked the intent to deceive Prado in obtaining the loan, thereby properly granting her motion for judgment. We AFFIRM.

---

5. A court may infer such an intent if the facts and circumstances of a particular case present a picture of deceptive conduct by a debtor. *See In re Eashai,* 87 F.3d 1082, 1087 (9th Cir.1996) (citing *In re Faulk,* 69 B.R. 743, 755 (Bankr.N.D.Ind.1986)).