[No. B038441. Second Dist., Div. Three. Oct. 31, 1989.]

DEAN DAVID ZILMER, Plaintiff and Appellant, v.
CARNATION COMPANY et al., Defendants and Respondents.

**COUNSEL**

Epstein, Reed & Snyder, Howard A. Snyder and S. K. Khalsa for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, William S. Waldo, Paul W. Cane, Jr., and Nancy A. Weeks for Defendants and Respondents.

**OPINION**

**DANIELSON, J.**—Plaintiff and appellant Dean David Zilmer sued defendants and respondents Carnation Company (Carnation), and supervisory employees Mortimer Adams and Arthur Pate,[1] and various Does for wrongful termination of employment, breach of an implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, and fraud. He thereafter substituted the Nestle Corporation (Nestle) in place and stead of one of the Does. The trial court sustained the demurrer of Carnation and Adams to the complaint with leave to amend; the parties stipulated that the

---

[1] Pate was not served.

order was also effective as to Nestle.[2] Plaintiff elected not to amend, and dismissed the action. He appeals from the order of dismissal.[3] We affirm the order as to the first and fourth causes of action, reverse the order as to the second and third causes of action, and remand the matter with directions.

## FACTS

Plaintiff alleged he was constructively discharged by Carnation and Nestle on December 31, 1986, after 31 years of loyal and devoted service during which he rose from the position of office management trainee to division controller of the largest division of the company. In December of 1985, Pate and Adams, who were engaged in a reorganization of the accounting department, informed plaintiff that Carnation accounting directors or controllers without CMA certificates would have to take a course and obtain such certificates as a condition of their further employment by the company.[4] Plaintiff told Pate and Adams that because of his "immense job responsibilities, which included recently imposed added responsibilities and work requirements" due to Carnation's acquisition by the Nestle Corporation, he did not believe he could obtain the CMA certificate.

Plaintiff alleged defendants' representations were false and intended to create intolerable working conditions for plaintiff and thus force his resignation as part of a plan to replace high level managerial personnel of Carnation with associates and friends of Adams from Price Waterhouse, where he was formerly employed. After plaintiff's termination, defendants hired controllers and accounting directors who neither had, nor were required to obtain, CMA certificates; other employees of Carnation were also relieved of this obligation.

In his first cause of action, against Carnation and Nestle for breach of an oral contract of employment, plaintiff alleged the terms and conditions of his employment included both oral and written representations, and a company practice of "fair and equitable treatment." He alleged Carnation promised it would not act arbitrarily in dealing with him, and would not terminate his employment except for good cause. These promises were both expressed to plaintiff upon commencement of his employment, and implied by the conduct and activities of Carnation, its personnel policies and

---

[2] Nestle has filed in this court a copy of plaintiff's request for dismissal as to Nestle which was filed in the trial court on November 22, 1988, and claims in a covering letter that it is no longer a party to these proceedings. The request for dismissal is a nullity, as it was filed after plaintiff filed his notice of appeal.

[3] The appeal lies. (Code Civ. Proc., § 581, subd. (f)(2); *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790, 792-793 [181 Cal.Rptr. 340].)

[4] In their brief, Carnation and Adams explain that a CMA certificate, more fully a certified management accountant certificate, is a certificate of accounting proficiency.

practices, the longevity of plaintiff's employment by the company, and Carnation's repeated positive evaluations of his work.

Plaintiff's second cause of action was for Carnation's and Nestle's breach of an implied-in-fact contract of employment, and essentially reiterated the allegations of the first cause of action.

In his third cause of action, plaintiff alleged the above described conduct of Carnation and Nestle constituted a breach of the covenant of good faith and fair dealing inherent in the employment contract, caused him emotional distress, and was "oppressive, fraudulent, malicious, intentional, and deliberate, and carried out despite the protests of Plaintiff against such conduct."

In his fourth cause of action, for fraud against all defendants, plaintiff again alleged defendants' representations regarding the necessity for CMA certificates, upon which he relied, "were in fact pretextual, false, and known by the Defendants to be false at the time said promises and representations were made." In addition, the representations were made for the purpose of forcing plaintiff to resign or be terminated, in order to replace him with associates or friends of Adams from Price Waterhouse.

Plaintiff sought compensatory damages in the sum of $1 million, and punitive damages in the sum of $25 million in connection with his third and fourth causes of action.

## The Trial Court's Ruling

The trial court sustained the demurrer in the belief that an allegation of violation of public policy is requisite to maintenance of an action for constructive wrongful discharge, whether the action be in tort or contract.

## Discussion

On this appeal from an order of dismissal entered after the trial court sustained defendants' demurrer, " 'we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity' of the decision below. [Citations.]" (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 663 [254 Cal.Rptr. 211, 765 P.2d 373].) In addition, because plaintiff refused to amend his complaint after the demurrer was sustained, we must presume that he has stated his case as strongly as it can be stated in his favor (*Hesse* v. *Vinatieri* (1956) 145 Cal.App.2d 448, 454-455 [302 P.2d 699]), and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on

any ground raised by the demurrer. (*Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 [212 Cal.Rptr. 743].)

*Plaintiff Alleged an Implied Contract*

▪ Although plaintiff describes his first cause of action as one for breach of an express oral contract, he does not allege explicit words by which the parties agreed that he would not be terminated without good cause. Instead he alleges that a course of conduct, including various oral and written representations, created a reasonable expectation to that effect. Thus, his action is more properly described as one for breach of an implied-in-fact contract (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, 675), and the demurrer was properly sustained as to the first cause of action.

In *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917], the court stated that a variety of factors may support the formation of an implied-in-fact contract to discharge only for good cause: "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." (*Id.* at p. 327, fns. omitted.) ▪ We hold the allegations of plaintiff's second cause of action are sufficient to plead an implied-in-fact contract to terminate only for good cause.

*Plaintiff Was Not Required to Allege That His Employer Violated Public Policy in This Contract Action*

Although there is no authority directly in point, the trial court's conclusion that plaintiff's complaint failed to state a cause of action was based essentially on the decision in *Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299 [242 Cal.Rptr. 324].

The plaintiff in *Brady* sued her employer for sexual discrimination and *tortious* constructive discharge. Her complaint as to the latter was essentially that she was an at-will employee, having no contract of employment, express or implied; that she was constructively discharged, i.e., forced to resign, by her employer; and that the employer's conduct in forcing her resignation was wrongful, i.e., actionable. The *Brady* court held that "to establish a tortious constructive discharge, an employee must show:

"(1) the actions and conditions that caused the employee to resign were violative of public policy;

"(2) these actions and conditions were so intolerable or aggravated at the time of the employee's resignation that a reasonable person in the employee's position would have resigned; and

"(3) facts and circumstances showing that the employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact on the employee and could have remedied the situation." (196 Cal.App.3d at p. 1306.)

In a footnote to its discussion, the *Brady* court stated: "In this case we deal with a tortious constructive discharge as opposed to a constructive discharge in a breach of employment contract or bad faith context. (See *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1163-1172 [226 Cal.Rptr. 820] . . . [distinguishing between tortious, contractual, and bad faith wrongful discharge].) While the principles enunciated in this case may be applicable to the other two areas, we decide in this case only what facts and circumstances will constitute a constructive discharge in a tortious discharge context." (*Brady* v. *Elixir Industries, supra,* 196 Cal.App.3d at p. 1305, fn. 4.) ▮▮ Defendants cite this language in support of their contention that an employee seeking recovery for constructive discharge must in any case show that "the actions and conditions that caused the employee to resign were violative of public policy." We disagree.

*Brady* is consistent with the more recent decision of our Supreme Court in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, recognizing that a terminated employee who lacks the protection of an express or implied contract of employment may state a cause of action for tortious discharge in contravention of public policy: "Labor Code section 2922 provides in relevant part, 'An employment, having no specified term, may be terminated at the will of either party on notice to the other. . . .' This presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. [Citations.] Absent any contract, however, the employment is 'at will,' and the employee can be fired with or without good cause. But the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy, since otherwise threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 665, fns. omitted.)

It appears to us that the public policy requirement of *Brady, supra,* had to do with the tortious aspect of the discharge in that case, rather than its constructive nature. ▮ As the court stated in *Foley,* "The distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.' (Prosser, Law of Torts (4th ed. 1971) p. 613.)" (*Foley* v. *Interactive Data Corp., supra,* 47

Cal.3d at p. 683; *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1165 [226 Cal.Rptr. 820].)

■  We conclude that an employee who is forced to resign due to actions and conditions so intolerable or aggravated at the time of his resignation that a reasonable person in the employee's position would have resigned, and whose employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact upon the employee and could have remedied the situation, but did not, is constructively discharged. Absent a contract of employment, express or implied, the employee must also show, as in all tortious wrongful termination cases (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 665), that the actions and conditions that caused the employee to resign were violative of public policy.  ■  The instant action, which is based on an implied-in-fact contract, does not require such a showing.

*Plaintiff Stated a Cause of Action for Constructive Discharge*

■  There remains a question whether plaintiff has otherwise alleged sufficient facts to constitute constructive discharge. He alleged he was told by his superiors that all Carnation accounting directors or controllers would have to take a course and obtain a CMA certificate in order to continue in their employment. He responded that he did not believe he could obtain a CMA certificate because of his "immense job responsibilities and work requirements," and was informed no exceptions would be made to this policy. Plaintiff alleged the certification requirement was "pretextual" and "false," in that after his termination defendants hired noncertificated accounting directors and controllers, relieving them and other similarly situated employees from the requirement. He also alleged the stated requirement was "specifically intended to create intolerable working circumstances for the plaintiff, thereby resulting either in his termination or his resignation."

" 'Though not always employing precisely the same language, most courts seem to have adopted the rule that a constructive discharge occurs in this context when an employer deliberately causes or allows the employee's working conditions to become "so intolerable" that the employee is forced into an involuntary resignation.' [Citations.]" (*Smith* v. *Brown-Forman Distillers Corp.* (1987) 196 Cal.App.3d 503, 513 [241 Cal.Rptr. 916].) " 'Whenever a person is severed from his employment by coercion the severance is effected not by his own will but by the will of a superior. A person who is forced to resign is thus in the position of one who is discharged, not of one who exercises his own will to surrender his employment voluntarily.' [Citation.]" (*Keithley* v. *Civil Service Bd.* (1970) 11 Cal.App.3d 443, 450 [89

Cal.Rptr. 809], quoting *Moreno* v. *Cairns* (1942) 20 Cal.2d 531, 534, 535 [127 P.2d 914].)

As we read the complaint before us, plaintiff alleges the certification requirement imposed by defendants was unreasonable in the circumstances, and created an intolerable work situation that could result only in his termination or resignation. He has thus pled a constructive discharge. For pleading purposes, his allegations of pretext establish the discharge was without good cause.

*Plaintiff May Not Recover in Tort for Breach of the Implied Covenant of Good Faith and Fair Dealing*

In *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, the court criticized cases approving recovery in *tort* for breach of the implied covenant of good faith and fair dealing inherent in every employment contract (e.g., *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860]; *Koehrer* v. *Superior Court, supra,* 181 Cal.App.3d 1155, 1171; see also *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 179, fn. 12 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), stating the employment relationship "is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 693.) However, *Foley* recognized the continued existence of a separate *contract* cause of action for breach of the implied covenant. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 976 [258 Cal.Rptr. 592, 772 P.2d 1059].)

In his third cause of action, plaintiff alleged Carnation and Nestle informed him of a pretextual requisite to his continued employment, for the purpose of terminating his employment and replacing him with associates of Adams. These allegations are sufficient to establish a cause of action for breach of the implied covenant. (*Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 262.)

The trial court erred in sustaining the demurrer to plaintiff's third cause of action. However, the punitive damage allegations must be stricken therefrom.[5]

---

[5] For the first time on this appeal, plaintiff claims this cause of action is based on defendants' bad faith denial of the existence of the employment contract. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 769 [206 Cal.Rptr. 354, 686 P.2d 1158].) The allegations of his complaint are clearly insufficient to support such a theory.

■ In addition, insofar as plaintiff alleges he suffered emotional distress by reason of defendants' conduct in causing his termination, his claim is precluded by the "exclusive remedy" provision of the Workers' Compensation Act (Lab. Code, § 3201 et seq.). Section 3600 of the act, which states the conditions of compensation that must concur before an employer is liable for an employee's injury, includes the requirement that "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (§ 3600, subd. (a)(2).) Where these conditions concur, "the right to recover such compensation is, [with certain exceptions not applicable here], the sole and exclusive remedy of the employee . . . against the employer . . . ." (§ 3602, subd. (a).)

In *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743], the court held that, "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Id.* at p. 160.)

Termination necessarily arises out of the employment relationship since it is the event that ends that relationship. And termination is no less a normal risk of employment because it is alleged to be wrongful. Therefore, injury to an employee resulting from a termination—whether characterized as in bad faith or not—is an inherent risk of employment. When an employee claims injuries as a result of termination of his or her employment, those injuries also necessarily occur in the course of the employment.

The allegations of emotional distress must also be stricken from plaintiff's third cause of action.

*Plaintiff Failed to State a Cause of Action for Fraud*

■ Finally, plaintiff claims entitlement to damages for fraud because of defendants' representations that plaintiff and all similarly situated employees would have to obtain CMA certificates. However, he does not claim the stated requirement did not in fact apply to him; he alleges falsity of the representations only as they applied to the other employees, who ultimately were not required to obtain CMA certificates. Thus, it appears his allegations of misrepresentation have to do with proof of the pretextual nature of

the stated requirement in forcing his resignation, rather than a separate cause of action for fraud.

The trial court properly sustained the demurrer as to the fourth cause of action.

## DECISION

The order of dismissal is affirmed as to the first and fourth causes of action set forth in the complaint. The order is reversed as to the second and third causes of action, and the matter is remanded to the trial court, which is ordered to strike the punitive damage and emotional distress allegations from the third cause of action. Appellant to recover costs on appeal.

Klein, P. J., and Arabian, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 25, 1990.