[No. B057578. Second Dist., Div. Seven. Dec. 16, 1991.]

NANCY ANN SOULES, Plaintiff and Appellant, v. CADAM, INC., et al., Defendants and Respondents.

**COUNSEL**

Mathews & Evans and William D. Evans for Plaintiff and Appellant.

O'Melveny & Myers, Gordon E. Krischer and Craig A. Horowitz for Defendants and Respondents.

## Opinion

**LILLIE, P. J.**—In what is fundamentally an action for damages for wrongful constructive termination of employment, plaintiff appeals from summary judgment in favor of defendants.

### Factual and Procedural Background

Plaintiff's second amended complaint (complaint) contained causes of action for age discrimination (Gov. Code, § 12940 et seq.), sex discrimination (*ibid.*), wrongful constructive termination in breach of employment contract, wrongful constructive termination in breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with contractual relations, libel, slander, negligence, prima facie tort, and conspiracy.

After answering the complaint defendants[1] moved for summary judgment or, in the alternative, summary adjudication of issues. In support of the motion defendants presented plaintiff's deposition. The following statement of facts is based on plaintiff's deposition testimony and the parties' joint statement of undisputed facts.

In 1966 plaintiff was hired by Lockheed Corporation as an electronic data processing typist. When plaintiff was hired she signed a document wherein she acknowledged that "no representation of employment conditions . . . shall be valid." Plaintiff was employed by Lockheed from 1966 to 1986. During the last 10 years of that period plaintiff worked in the payroll department; she never held a managerial position at Lockheed. In 1986 plaintiff applied for a position with defendant Cadam, Inc., a subsidiary of Lockheed. Plaintiff was required to fill out a new employment application at Cadam. She was hired by Cadam to work in its payroll department. Upon accepting employment with Cadam, plaintiff again signed a document stating that "no representation of employment conditions . . . shall be valid." In 1987 plaintiff was promoted to payroll manager; in that position she supervised one full-time employee.

Early in 1989 Cadam acquired defendant P-Cad Systems, Inc. As a result of the acquisition plaintiff's supervisor left and was replaced by defendant Ronald Egy. In April 1989 plaintiff was promoted to manager of employee

---

[1]The defendants are: Cadam, Inc., a subsidiary of Lockheed Corporation; Personal Cad Systems, Inc. (P-Cad), a corporation acquired by Cadam, Inc.; International Business Machines Corporation, which acquired the assets of both Cadam and P-Cad subsequent to plaintiff's alleged constructive discharge; Ronald Egy, a P-Cad employee who was plaintiff's supervisor; and James Pardee, an officer of P-Cad who was Egy's supervisor.

services and reported directly to Egy who, in turn, reported to defendant James Pardee. As manager of employee services plaintiff supervised five employees and was responsible for various service functions as well as payroll activities. In June and August 1989 Pardee distributed memoranda setting out the goals for each manager and stating what each had accomplished. Egy met with plaintiff and advised her that she needed to spend more time training the full-time employees under her supervision.

On August 23, 1989, Egy prepared a written evaluation of plaintiff's job performance. Egy divided the evaluation into two time periods: before and after plaintiff's promotion to manager of employee services. For the period prior to her promotion Egy rated plaintiff's performance as good; for the period following her promotion he rated her performance as "needs improvement," but did not rate any specific job skill as unsatisfactory. Plaintiff's overall performance was rated as good. Plaintiff and Egy discussed the performance evaluation item by item. Plaintiff disagreed with the evaluation and in September 1989 she informed Egy in writing that she felt unduly criticized. Plaintiff testified that she did not object to constructive criticism, but thought Egy should have told her about perceived shortcomings in her job performance at the time they occurred so that she could have corrected them. In plaintiff's view it was unfair to withhold criticisms until the time of the written evaluation of her performance, which became part of her permanent record. Plaintiff further testified that she did not object to the performance rating in the evaluation, but only to the wording of the evaluation.

In a memorandum to plaintiff dated November 14, 1989, Egy informed plaintiff of her immediate reassignment (demotion) from the position of employee services manager to member of the financial staff; the memorandum explained that the reassignment would not affect plaintiff's salary or her bonus for 1989. Plaintiff received the memorandum on November 15. She reported for work for the last time on November 17, 1989; she stayed for only half an hour and then went home because she was too upset to work. Plaintiff never returned to Cadam. On November 22, 1989, she consulted a psychologist who placed her on sick leave based on his diagnosis that she was under severe emotional distress and needed some time away from work. On January 17, 1990, while plaintiff was still on sick leave, her attorney notified defendants that plaintiff's employment "was terminated" (i.e., plaintiff resigned) effective February 5, 1990, and that she regarded her termination as a constructive discharge by defendants. By letter dated January 30, 1990, defendants informed plaintiff that she was "absolutely welcome" to return to her job. On June 6, 1990, defendants, through counsel, offered to meet with plaintiff to alleviate any concern she might have about returning to her job. Plaintiff rejected defendants' offers of reinstatement and commenced the present action in February 1990.

■■■ In opposition to the motion for summary judgment plaintiff submitted her declaration wherein she stated inter alia:[2] Throughout the period of her employment at Lockheed, she received promotions, merit salary increases, achievement awards, and A's and B's on all of her job performance ratings. After plaintiff went to work for Cadam, and through 1988, all periodic appraisals of plaintiff's work rated her performance as good; she received a promotion and merit salary increases. While plaintiff never was given an express promise that her employment would be terminated only for good cause, she believed that such a promise was implied because of her 23 years of service to Lockheed and Cadam, her promotions, and the salary increases which she received.

The motion for summary judgment was granted. Judgment was entered in favor of defendants and against plaintiff on all causes of action. Plaintiff appeals from the judgment.

DISCUSSION

I

STANDARD OF REVIEW

 Summary judgment is proper where the evidence submitted by the moving party is sufficient to sustain a judgment in its favor and the opposing party does not present evidence sufficient to raise a triable issue of material fact. (*Bartlett* v. *State of California* (1988) 199 Cal.App.3d 392, 397 [245 Cal.Rptr. 32].) A defendant moving for summary judgment must present evidence which either establishes a complete defense to plaintiff's action or demonstrates the absence of an essential element of plaintiff's case. (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877].) Even though plaintiff bears the burden of establishing the critical elements of his case at trial, the burden is on the moving party to establish a factual basis which will support judgment in its favor as a matter of law. (*Pena* v. *W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924, 927-928 [225 Cal.Rptr. 76].) "In other words, the moving party must negate the matters the resisting party would otherwise have to prove at trial." (*Khan* v. *Shiley Inc.* (1990) 217 Cal.App.3d 848, 854 [266 Cal.Rptr. 106].)

---

[2]The normal policy of liberal construction given to declarations opposing a motion for summary judgment does not apply where the declaration contradicts declarant's earlier admissions in a deposition. (*Kerr* v. *Rose* (1990) 216 Cal.App.3d 1551, 1563 [265 Cal.Rptr. 597].) "The assertion of facts contrary to prior testimony does not constitute substantial evidence of the existence of a triable issue of fact." (*Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 574 [259 Cal.Rptr. 518], internal quotation marks omitted.) Accordingly, we summarize only relevant portions of plaintiff's declaration which do not contradict her deposition testimony.

■ In reviewing a grant of summary judgment, an appellate court must make its own independent determination of the construction and effect of the papers submitted. (*Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].) Accordingly, we review the summary judgment without deference to the trial court's determination.

## II

### CONSTRUCTIVE DISCHARGE

■ "[A]n employee who is forced to resign due to actions and conditions so intolerable or aggravated at the time of his resignation that a reasonable person in the employee's position would have resigned, and whose employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact upon the employee and could have remedied the situation, but did not, is constructively discharged. Absent a contract of employment, express or implied, the employee must also show, as in all tortious wrongful termination cases [citation], that the actions and conditions that caused the employee to resign were violative of public policy." (*Zilmer* v. *Carnation Co.* (1989) 215 Cal.App.3d 29, 38 [263 Cal.Rptr. 422].)

Plaintiff relied on both theories—breach of implied contract of employment and violation of public policy—to establish constructive discharge.

### A

### *Breach of Implied Contract*

The complaint alleged: At all times in the course of her employment by Lockheed and Cadam, plaintiff performed her job in a satisfactory manner; based on the length of her service, substantial pay increases and superior job evaluations, Lockheed and Cadam impliedly promised plaintiff that as long as she performed her job satisfactorily her employment would continue. Defendants breached said employment agreement by providing plaintiff with false evaluations of her performance as manager of employee services and demoting her from that position to member of financial staff, thereby making the conditions of plaintiff's employment so intolerable that she was forced to resign.

■ Labor Code section 2922, which provides that an employment relationship of unspecified duration may be terminated at the will of either party, establishes a presumption of at-will employment. This presumption may be

overcome by evidence of an implied agreement that the employment would continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of a cause for termination. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 680 [254 Cal.Rptr. 211, 765 P.2d 373].) "[F]actors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." (*Ibid.*, internal quotation marks omitted.)

■ Defendants contend they established the absence of an implied agreement that plaintiff's employment would be terminated only for good cause by evidence that when plaintiff began working at Lockheed, and again when she was hired by Cadam, she signed a document which stated "no representation of employment conditions or rates of pay, other than set forth above, shall be valid." As *Foley* notes, factors other than express terms are relevant in determining the existence of an implied employment agreement. Defendants presented no evidence showing the absence of such factors, while plaintiff's declaration showed the presence of some of them (length of plaintiff's service, promotions, salary increases, and superior performance ratings). Such evidence was sufficient to raise a triable issue regarding the existence of an implied agreement that plaintiff would not be discharged except for good cause. (See *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 14-15 [267 Cal.Rptr. 618].)

■ To prevail, however, plaintiff also must prove that the implied contract of employment was breached by conduct of defendants constituting constructive discharge.[3] "Whether conditions were so intolerable as to justify a reasonable employee's decision to resign is normally a question of fact. [Citation.] Situations may exist, however, where the employee's decision to resign is unreasonable as a matter of law." (*Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1056 [282 Cal.Rptr. 726].) The instant case presents such a situation.

The allegedly intolerable working conditions which forced plaintiff to resign consisted of an evaluation of plaintiff's performance to which she

---

[3]The same conduct on defendants' part is alleged to constitute both breach of the employment contract and breach of the implied covenant of good faith and fair dealing inherent in the contract. Inasmuch as the nature and extent of the obligations imposed by the covenant depend on the contract and the parties' justified expectations (*Sheppard* v. *Morgan Keegan & Co.* (1990) 218 Cal.App.3d 61, 66-67 [266 Cal.Rptr. 784]), the ensuing discussion applies to plaintiff's cause of action for breach of the covenant as well as her cause of action for breach of the implied-in-fact contract.

objected and her demotion from manager of employee services to member of the financial staff. ■ The fact that an employee received a poor performance rating will not support a finding of constructive discharge. (*Valdez* v. *City of Los Angeles, supra*, 231 Cal.App.3d at p. 1056.) Plaintiff's overall performance was rated as good; she did not object to the rating, but to the wording of the evaluation and to the fact that defects in her performance noted in the evaluation were not called to her attention immediately so that she could correct them. Plaintiff cites no authority, and we have discovered none, which holds that the features of the performance evaluation criticized by plaintiff created working conditions so intolerable as to cause a reasonable employee to resign. ■ Further, demotion of job level, even when accompanied by reduction in pay, does not constitute constructive discharge. (*Wagner* v. *Sanders Associates, Inc.* (C.D.Cal. 1986) 638 F.Supp. 742, 745.)

■ In another context our Supreme Court stated: "In order to properly manage its business, every employer must on occasion review, criticize, demote, transfer and discipline employees. . . . [¶] . . . [W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743].) Since demotion of an employee or criticism of his job performance—even if alleged to be unfair or outrageous—does not permit the employee to bypass the remedy afforded by the workers' compensation law and sue his employer for emotional distress and resultant physical disability caused by such conduct, the same conduct does not create the intolerable working conditions necessary to support a claim of constructive discharge.

*B*

*Violation of Public Policy*

■ The rule that an employee may pursue an action for tortious constructive discharge in violation of public policy is not limited to situations where, as a condition of employment, the employer coerces the employee to commit an act that violates public policy or restrains the employee from exercising a fundamental right. Such an action will lie wherever the basis of the discharge contravenes a fundamental public policy, such as the public policy against sex discrimination in employment. (*Rojo* v. *Kliger* (1990) 52

Cal.3d 65, 90-91 [276 Cal.Rptr. 130, 801 P.2d 373]; *Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299, 1305 [242 Cal.Rptr. 324].) A like rationale applies to age discrimination in the workplace. (See *Collier* v. *Superior Court* (1991) 228 Cal.App.3d 1117, 1126-1127 [279 Cal.Rptr. 453].)

The complaint alleged that at or about the time defendants demoted plaintiff, a female over the age of 40, from her position as manager of employee services, they replaced plaintiff with one David Laeha, a male under 40. It was further alleged: "To the extent that Soules' age [and/or sex] . . . was a substantial factor contributing to defendants' unsatisfactory rating of Soules, her demotion from manager of employees services department and the final wrongful constructive discharge of Soules, defendants' aforesaid acts and conduct constituted employment discrimination because of age [and/or sex] which was a substantial factor in causing damages and injury to Soules" in violation of Government Code sections 12940, subdivisions (a) and (i), and 12941, subdivision (a).[4]

In general, a single, isolated instance of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge. Hence, a plaintiff alleging constructive discharge must show aggravating factors such as a continuous pattern of discrimination. (*Watson* v. *Nationwide Ins. Co.* (9th Cir. 1987) 823 F.2d 360, 361 [race discrimination]; *Nolan* v. *Cleland* (9th Cir. 1982) 686 F.2d 806, 813 [sex discrimination]; *Real* v. *Continental Group, Inc.* (N.D.Cal. 1986) 627 F.Supp. 434, 443 [age discrimination]; *Valdez* v. *City of Los Angeles*, *supra*, 231 Cal.App.3d 1043, 1056 [discrimination based on national origin].)

In her deposition plaintiff testified: Her belief that she was the victim of age and sex discrimination was based on the fact that a man under 40 years of age was hired to replace her as manager of employee services;[5] on one occasion a fellow employee called plaintiff an "old-timer"; plaintiff admitted that such remark did not create a hostile and offensive work

---

[4]Government Code section 12940 provides in pertinent part: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of the . . . sex of any person, . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment. . . . [¶] (i) For an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

Government Code section 12941 reads in relevant part: "(a) It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action. . . ."

[5]While replacement by someone younger, without more, does not support an inference of age discrimination, a substantial difference in the ages may be circumstantial evidence that

environment for her; the human resources department of Cadam prepared a list of employees with more than 15 years of service; plaintiff was not told that any of the employees on the list were slated for layoff or termination because of their ages; the work environment at Cadam was not hostile, intimidating or offensive for plaintiff because of her gender.

The foregoing evidence presented by defendants establishes that plaintiff was not the victim of even a single, isolated instance of age or sex discrimination, much less the target of a pattern of continuous discrimination. Accordingly, summary judgment was properly granted on plaintiff's cause of action for constructive discharge based on violation of public policy,[6] and on her causes of action for age and sex discrimination to the extent they are asserted independently and not as a basis of plaintiff's claim of constructive discharge.

## III

### Causes of Action Sounding in Tort

In *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, the Supreme Court described three theories under which a wrongful termination action may be brought: (1) a tort cause of action for discharge in violation of public policy; (2) a contract cause of action for breach of an express or implied-in-fact agreement to discharge for good cause only; and (3) a cause of action for breach of the implied-in-law covenant of good faith and fair dealing. (*Id.,* at p. 662.) The principal issue was whether breach of the implied covenant entitled plaintiff to tort damages or whether he was limited to contract remedies. *Foley* held that "contractual remedies should remain the sole available relief for breaches of the implied covenant of good faith and fair dealing in the employment context." (*Id.,* at p. 696.) Accordingly, a plaintiff may recover tort damages for wrongful termination only if the discharge was in violation of public policy. That factor was negated by defendants' evidence in support of their motion for summary judgment.

Plaintiff's remaining tort causes of action (intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with contractual relations, libel, slander, negligence, prima facie tort,

gives rise to such inference. (*Maxfield* v. *Sinclair Intern.* (3d Cir. 1985) 766 F.2d 788, 792-793.) Plaintiff requested a three-month continuance of the hearing on motion for summary judgment to permit her "to obtain the necessary evidence to establish the presence of age and sex discrimination at her workplace." (See Code Civ. Proc., § 437c, subd. (h).) Plaintiff does not challenge the denial of that request.

[6]The parties argue at length the issue whether defendants had actual or constructive knowledge of the intolerable conditions in plaintiff's workplace which allegedly constituted constructive discharge. (See *Zilmer* v. *Carnation Co., supra,* 215 Cal.App.3d 29, 38.) It is unnecessary to discuss the point in view of our conclusion that no such conditions existed.

and conspiracy) are founded on defendants' conduct which formed the basis of the causes of action for wrongful constructive discharge in breach of the contract of employment and the implied covenant of good faith and fair dealing: evaluating plaintiff's job performance and demoting her.

 It has been held that under *Foley* damages for emotional distress are not recoverable in a wrongful discharge action. (*Fidler* v. *Hollywood Park Operating Co.* (1990) 223 Cal.App.3d 483, 487 [272 Cal.Rptr. 895].) The same result logically follows with regard to plaintiff's causes of action for interference with contractual relations, defamation, negligence, prima facie tort and conspiracy. (See *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1058-1059 [275 Cal.Rptr. 594].) In holding that tort damages are not recoverable for breach of the covenant of good faith and fair dealing, the court in *Foley* stated: "[W]e believe that focus on available contract remedies offers the most appropriate method of expanding available relief for wrongful terminations. The expansion of tort remedies in the employment context has potentially enormous consequences for the stability of the business community." (*Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 699.) This policy would be thwarted if plaintiff were permitted to recover tort damages by affixing tort labels to causes of action founded on defendants' conduct which forms the basis of her claim of constructive discharge based on breach of contract and breach of the covenant of good faith and fair dealing. As defendants succinctly state: "In short, an employee who was not constructively discharged . . . cannot maintain additional tort theories against her employer based on the same underlying facts."

 A defendant's motion for summary judgment necessarily includes a test of the sufficiency of the complaint. (*Centinela Hospital Assn.* v. *City of Inglewood* (1990) 225 Cal.App.3d 1586, 1595 [275 Cal.Rptr. 901].) The following tort causes of action do not state a claim for relief and summary judgment therefore was properly entered in favor of defendants on those causes of action: infliction of emotional distress, interference with contractual relations, libel, slander, negligence, prima facie tort, and conspiracy.

DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1992.