Alfred F. **TONRY,** Plaintiff–Appellee,

v.

**SECURITY EXPERTS, INC.,**
Defendant–Appellant,

and

**Robert FOGLIA, Defendant.**

**No. 92–15505.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided March 28, 1994.

---

Randolph C. Roeder, Littler, Mendelson, Fastiff & Tichy, San Francisco, CA, for defendant-appellant.

John R. Clifford, Hyde & Drath, San Francisco, CA, for plaintiff-appellee.

Before: CANBY, and NOONAN, Circuit Judges, and HUFF, District Judge.[*]

## OPINION

HUFF, District Judge:

Security Experts, Incorporated ("SEI") appeals the district court's judgment in favor of Alfred F. Tonry's action for breach of an implied employment contract action. SEI also appeals the district court's dismissal of its counterclaims for breach of the duty of loyalty and the implied covenant of good faith and fair dealing. Finally, it appeals the district court's award of damages. We affirm.

## BACKGROUND

In July 1979, Alfred F. Tonry ended his seventeen-year police career to begin employment with SEI. SEI is a New York corporation which was founded in 1978 to provide professional security service for major commercial clients at certain United States airports. Although Tonry joined SEI at its New York facility, he relocated to open, operate and manage SEI's San Francisco facility in 1980. At that time, SEI promoted Tonry to the position of division manager and increased his annual salary from $30,000 to $40,000.

Tonry continued in the position of division manager until November 11, 1987. His annual salary during that period rose to a high

of over $65,000 (plus bonuses). SEI also provided Tonry with disability insurance and health benefits for his family and a company car. Throughout the period of his employment at SEI, SEI and its clients consistently viewed Tonry's work with favor. Moreover, there were no specific criticisms of his work during the more than eight years that he worked for SEI.

James Motherway, Tonry's close friend, served as SEI's president from 1979 until June 1987, when he resigned. At that time, Robert Foglia, SEI's founder and major shareholder, assumed the position of president. One month after resigning, Motherway made a trip to California. During a portion of the trip, Motherway stayed at Tonry's home. In addition, he and Tonry had lunch with Sandy Phillips, a representative of DHL Airways ("DHL"), one of SEI's major clients. The purpose of the lunch was to announce Motherway's resignation to Phillips, a close professional colleague.[1]

In July 1987, Tonry had a conversation with fellow SEI employee Mark Cox, Manager of the Dayton and Cincinnati, Ohio facilities. Cox was concerned about his job security in light of the apparently precarious financial condition of SEI at the time and a recent, unsettling meeting with Foglia. Tonry reassured Cox that his position with SEI was secure. Tonry also discussed with Cox the steps necessary to establish a competing security business.

Among other things, Tonry mentioned his lunch with Sandy Phillips and commented that DHL would always need security at its Ohio hub. Finally, Tonry stated that, in light of the absence of a written employment contract containing any such restrictions, Cox had the option of resigning from his position at any time in order to establish a competing business. Tonry and Cox had similar discussions in August and September 1987.[2]

---

[*] The Honorable Marilyn L. Huff, District Judge for the Southern District of California, sitting by designation.

**1.** SEI argues the trial court erred by concluding that the purpose of the lunch, and Tonry's role in it, were innocuous. In sum, SEI argues the evidence conclusively demonstrated 1) Mother-

way met with Phillips to recruit her company as a client for his forthcoming security business; and 2) Tonry knew as much.

**2.** SEI argues the trial court erred by concluding the purpose of Tonry's conversations with Cox was to reassure Cox that his job was secure and

While Tonry considered the steps necessary to establish his own security business, he took no overt step toward doing so. He never identified or spoke to specific potential investors and while he did obtain a security license in the latter part of 1987, he did so only at Foglia's behest.

In August 1987, SEI decreased Tonry's annual salary from $55,000 to $35,000. On November 11, 1987, SEI reassigned Tonry to the position of night watchman at the Oakland facility, working an 8:00 p.m. to 5:00 a.m. shift. At the time of his reassignment, Tonry lost use of a company car. On December 2, 1987, Tonry resigned from SEI. He subsequently obtained employment in the security and insurance industries.

At no point during Tonry's employment with SEI was he party to a written employment contract. In fact, in the summer of 1987, Tonry refused to enter into a written contract with SEI which provided, among other things, that he could not be terminated without good cause. Nonetheless, although never formalized in either individual employment contracts or a policy manual, the general practice at SEI was to terminate employees only for good cause.

On March 29, 1988, Tonry filed suit against SEI and Foglia in the Superior Court for the State of California. The complaint stated causes of action for breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and inducement of breach of contract. On May 23, 1988, SEI and Foglia filed their answer and a cross-complaint against Tonry which stated causes of action for breach of the duty of good faith and fair dealing and the duty of loyalty. On December 1, 1988, SEI and Foglia removed the action to the United States District Court for the Northern District of California, based on diversity of citizenship.

On July 18, 1989, the district court granted SEI and Foglia's motion for summary judgment with respect to Tonry's claims alleging breach of the covenant of good faith and fair dealing, intentional infliction of emotional dis-

tress, and inducement of breach of contract. The district court then referred the parties to court-annexed arbitration. After hearing evidence, the arbitrator dismissed Tonry's remaining breach of contract action and SEI and Foglia's cross-complaint. Tonry then exercised his right to request a trial de novo. A seven-day bench trial on Tonry's remaining breach of contract claim and SEI and Foglia's cross-complaint commenced on April 1, 1991.

On September 12, 1991, the trial court issued its preliminary findings of fact and conclusions of law finding in favor of Tonry and directed the parties to submit memoranda concerning damages. On February 28, 1992, the trial court issued its final findings of fact and conclusions of law, finding in favor of Tonry and entering judgment in the amount of $33,701. The trial court also dismissed SEI and Foglia's cross-complaint.

## DISCUSSION

### I. STANDARDS OF REVIEW

 In reviewing a judgment following a bench trial, we review the district court's findings of fact for clear error and its legal conclusions de novo. *Stone v. Millstein,* 804 F.2d 1434, 1437 (9th Cir.1986); *Cooling Sys. and Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 487 (9th Cir.1985); Fed. R.Civ.P. 52(a). We apply the same standard to the district court's involuntary dismissal of SEI's cross-complaint. *Stone,* 804 F.2d at 1437. Finally, we review the district court's computation of damages for clear error. *Stephens v. City of Vista,* 994 F.2d 650, 655 (9th Cir.1993).

### II. EXISTENCE AND BREACH OF IMPLIED EMPLOYMENT CONTRACT

SEI argues the district court erred in finding: 1) Tonry had an implied-in-fact employment contract that required "good cause" for his termination; 2) SEI constructively discharged Tonry; 3) SEI lacked "good cause" to do so; and on the same grounds, 4) SEI

---

to advise him of his options in the unlikely event that it was not. Rather, SEI contends, the evidence demonstrated that Tonry's goal was to

have Cox leave SEI and deliver DHL as a client to Tonry and/or Motherway's own forthcoming security company.

failed to satisfy the elements of its counterclaim.

## A. Existence of Implied Employment Contract

■ SEI first argues the district court erred by concluding that Tonry had an implied contract of employment that required "good cause" for his termination. Under California law,[3] courts must interpret contracts "to effectuate the mutual intention of the parties at the time of contracting, so far as that intention is ascertainable and lawful." *Miller*, 885 F.2d at 507; *see also Schneider v. TRW, Inc.*, 938 F.2d 986, 990 (9th Cir.1991). Hence, the existence of an implied contract of employment turns on the intent of the parties. " ' "[I]t must be determined, as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for [an implied contract], and evidence may be introduced to rebut the inference and show that there is another explanation for the conduct." ' " *Miller*, 885 F.2d at 508 (quoting *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677, 254 Cal.Rptr. 211, 223, 765 P.2d 373, 385 (1988)) (alterations in original). In determining the parties' intent, the trial court should consider such factors as:

> Personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged....

*Foley*, 47 Cal.3d at 680, 254 Cal.Rptr. at 225, 765 P.2d at 387 (quoting *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 327, 171 Cal. Rptr. 917, 925–26 (1981)).

■ In the present case, the district court properly admitted extrinsic evidence regarding the circumstances of Tonry's employment to ascertain the intent of the parties. *See Miller*, 885 F.2d at 508. Based on that evidence, the court determined the totality of the circumstances demonstrated the intent to form an implied employment contract. The court found "particularly persuasive" the following factors:

(1) Tonry's more than 8 years of employment at SEI; (2) his early promotion to Division Manager of SEI's San Francisco facility; (3) Tonry and his family's relocation to San Francisco at SEI's request; (4) the series of increases in his annual salary; (4) [sic] the benefits provided, including the use of a company car; (5) the lack of criticism by SEI or its clients regarding Tonry's work; (6) the fact of and increase in his ownership interest in SEI during his employment; and (7) SEI's custom of not terminating employees except for good cause.

Excerpt of Record ("ER") at 55.

The district court's finding that the parties' actions demonstrated an intent to form an implied contract of continued employment is necessarily factual. *See Miller*, 885 F.2d at 508 n. 13. Because SEI fails to demonstrate the district court committed clear error in making that determination, we affirm.

## B. Constructive Discharge

■ SEI next argues the trial court erred by concluding that Tonry was constructively discharged. Under California law, constructive discharge occurs when an employee resigns in the face of intolerable or aggravated conditions sufficient to cause a reasonable person to resign. *See Soules v. Cadam Inc.*, 2 Cal.App.4th 390, 399, 3 Cal.Rptr.2d 6, 10 (1991); *Smith v. Brown–Forman Distillers Corp.*, 196 Cal.App.3d 503, 513, 241 Cal.Rptr. 916, 920 (1987); *Brady v. Elixir Indus.*, 196 Cal.App.3d 1299, 1306, 242 Cal.Rptr. 324, 328 (1987).

■ The district court utilized that test to conclude SEI constructively discharged Tonry. The district court cited its reliance on the following factors which, the court noted, "occurred after almost eight years of plaintiff's having directed SEI's San Francisco operations":

(1) plaintiff's demotion from a management position; (2) the significant reduction in plaintiff's salary; (3) the undetermined status of his employment in being relegat-

---

**3.** In reviewing the district court's findings in this diversity action, we apply principles of California law. *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 507 n. 12 (9th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990).

ed to the position of night watchman for an 8:00 p.m. to 5:00 a.m. shift; and (4) the stripping of certain benefits, e.g., use of a company car.[4]

ER at 56.

There is sufficient evidence in the record to support the district court's factual finding that a reasonable person in Tonry's position would have felt compelled to resign. We must give due regard to the district court's opportunity to judge the credibility of testimony and may not set aside its factual determinations unless clearly erroneous. *Cooling Sys.*, 777 F.2d at 487; Fed.R.Civ.P. 52(a). Because SEI fails to demonstrate that the district court committed clear error in determining that Tonry was constructively terminated, we affirm. *See Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991).

### C. Existence of "Good Cause" and Dismissal of SEI's Cross–Complaint

■ SEI next challenges the district court's conclusion that SEI lacked good cause to terminate Tonry. The district court made that finding after determining SEI did not meet its burden of showing "a fair and honest cause or reason" for Tonry's termination. ER at 56 (quoting *Pugh v. See's Candies*, 116 Cal.App.3d at 329, 171 Cal. Rptr. at 928). In addition, the district court dismissed SEI's cross-action, finding SEI failed to meet "its initial burden on its counterclaims for breach of covenant of good faith and fair dealing and the duty of loyalty." ER at 56–57. The district court based both rulings on its factual determination that, "[t]he proof at trial [did] not support a finding of fact that plaintiff sought to establish a competing business or attempted to lure DHL from SEI as his own client, much less any proof of disloyalty." ER at 57.[5]

In short, SEI attempts to retry its case on appeal by proffering evidence which purportedly demonstrates that Tonry planned and/or attempted to compete with SEI and otherwise acted in a disloyal fashion. Once again, however, we must give due weight to the district court's opportunity to judge the credibility of testimony and may not set aside the district court's finding that the proof at trial did not support SEI's allegations unless that finding was clearly erroneous. *Cooling Sys.*, 777 F.2d at 485; Fed.R.Civ.P. 52(a). Because SEI fails to demonstrate clear error in the district court's conclusion that SEI lacked good cause to terminate Tonry, we affirm. *See Sutton v. Atlantic Richfield Co.*, 646 F.2d 407, 412 (9th Cir.1981).

SEI challenges the district court's dismissal of its cross-complaint on the same factual grounds. After a seven-day bench trial, the district court found SEI had failed to meet "its initial burden on its counterclaims for breach of covenant of good faith and fair dealing and the duty of loyalty." ER at 56–57. SEI argues the same evidence that demonstrates the existence of cause to terminate Tonry also satisfies the elements of SEI's counterclaim. Once again, however, the district court found that evidence to be incredible. Because SEI fails to show clear error in that finding, we affirm. *See Stone*, 804 F.2d at 1437.

### III. DAMAGES

■ SEI also argues the district court erred by awarding Tonry $5,088 in damages for lost health insurance benefits. Whether a court selects the correct legal standard in computing damages is reviewed de novo. *R.B. Matthews, Inc. v. Transamerica Transp. Serv.*, 945 F.2d 269, 272 (9th Cir. 1991). However, we review a district court's computation of damages under the clearly erroneous standard. *Stephens v. City of Vista*, 994 F.2d at 655. Thus, an actual award of

---

4. SEI argues that Tonry's demotion, standing alone, could not legally rise to the level of constructive discharge. Without addressing the merit of that argument, we note the district court clearly relied upon a number of factors, rather than Tonry's demotion alone, to determine he was constructively discharged.

5. The court also noted, "the ease with which SEI could have confirmed whether plaintiff was in fact engaging in disloyal conduct—e.g., by contacting Sandy Phillips of DHL; Foglia's unverified acceptance of Mark Cox's statements [sic]— seriously weakened SEI's efforts to meet its burden of proof at trial." ER at 57.

damages, computed under the correct legal standard, should be disturbed only when it is clear that the evidence does not support it. *City of Phoenix v. Com/Sys.*, 706 F.2d 1033, 1039 (9th Cir.1983); *see also In re James E. O'Connell Co., Inc.*, 799 F.2d 1258, 1261 (9th Cir.1986) (under California law, any doubts regarding amounts of damages resolved against defendant in breach of contract action).

 In the present case, the court applied the proper legal standard to calculate its award. Namely, the court awarded Tonry the difference between what Tonry would have earned if he had continued his employment with SEI and what he actually earned during the same period. ER at 59–60. *See Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 781 (9th Cir.1990) (citing *Parker v. Twentieth Century–Fox Film Corp.*, 3 Cal.3d 176, 89 Cal.Rptr. 737, 740, 474 P.2d 689, 692 (1970)). SEI does not contest the propriety of that standard.

 Rather, SEI contends Tonry may have been entitled to post-termination health insurance benefits as a former New York City policeman and that accordingly, the district court erred in including the value of those benefits in Tonry's award. However, SEI fails to cite evidence of Tonry's certain entitlement—let alone receipt—of the benefits in question. In short, because SEI fails to show clear error in the district court's inclusion of those benefits as damages, and because the district court was otherwise entitled to resolve any doubts regarding dam-

ages against SEI, we affirm the district court's award of damages.

## IV. IMPROPER REFERENCE TO ARBITRATION PROCEEDINGS ON APPEAL

Finally, Tonry requests that we impose sanctions against SEI for bringing this appeal. Tonry's primary contention is that SEI improperly referenced the findings of a court-annexed arbitrator to challenge the factual findings of the district court.[6] Because the issue is one of first impression, we decline to impose sanctions. However, we do address the propriety of SEI's conduct.

Before trial, the district court referred the action to mandatory court-annexed arbitration.[7] After hearing evidence, the arbitrator filed an "award" with the clerk's office, which served copies on the parties. The award merely stated the arbitrator's conclusion that neither party was entitled to relief. *See* N.Dist.Cal.L.R. 500–6(a)-(b). Although not required to do so, the arbitrator also summarized his findings in a separate document which he prepared for the benefit of the parties.[8] That "decision" was not filed in the district court.

 Tonry then timely exercised his right to request a trial de novo.[9] Under the arbitration system in question, the right to a full trial is preserved by the general inadmissibility of evidence of or from the arbitration proceedings in the district court.[10] Pursuant to the local rules, SEI cited neither the arbi-

---

**6.** Tonry also argues that SEI's appeal was frivolous. Because SEI's appeal was not clearly meritless, however, we do not impose sanctions on that basis. *See Amwest Mortg. Corp. v. Grady*, 925 F.2d 1162, 1165 (9th Cir.1991) (claim "frivolous" for Rule 38 purposes if results obvious or arguments wholly without merit).

**7.** The Northern District of California provides for "the mandatory referral of certain actions to court-annexed arbitration." N.Dist.Cal.L.R. 500–1. The purpose of that practice "is to establish a less formal procedure for the just, efficient and economical resolution of controversies involving moderate amounts of money damages while preserving the right to a full trial." *Id.* The Northern District court adopted the arbitration system in question pursuant to the 1988 Judicial Improvements and Access to Justice Act. *See* 28 U.S.C. §§ 651–58 (1988).

**8.** The document, entitled "Decision of Arbitrator", is a six-page summary of the arbitrator's legal and factual conclusions.

**9.** Under the pertinent local rules, "[i]f either party files and serves a written demand for a trial de novo within thirty days of entry of judgment on the award, that judgment shall immediately be vacated by the clerk and the action shall proceed in the normal manner before the assigned judge." N.Dist.Cal.L.R. 500–7(a).

**10.** Local Rule 500–7(b) provides: "At a trial de novo, unless the parties have otherwise stipulated, no evidence of or concerning the arbitration may be received into evidence, except that statements made by a witness at the arbitration hearing may be used for impeachment only." N.Dist.Cal.L.R. 500–7(b). In addition, the contents of the arbitration award are sealed from

tration proceedings nor the arbitrator's decision in the district court. On appeal, however, SEI included the arbitrator's decision in its excerpt of record. In addition, SEI made general reference to the arbitration proceedings—both in its reply brief and during oral argument—to challenge the factual findings of the district court. By doing so, SEI acted improperly in at least two fashions.

First, SEI violated Rule 10 of the Federal Rules of Appellate Procedure by including the arbitrator's decision in its excerpt of record. Rule 10 states that the record on appeal consists of, "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries...." Fed. R.App.P. 10(a). Because the decision was never filed in the district court, SEI violated Rule 10 by including the decision in its excerpt of record.

Second, SEI acted improperly by referencing the arbitration proceedings in its briefing and at oral argument. In short, SEI attempted to rely upon evidence inadmissible at trial to challenge the district court's factual findings on appeal.[11] To allow a party to do so would vitiate any right to a de novo trial. Moreover, it would violate a basic tenet of appellate jurisprudence; namely, that parties may not unilaterally supplement the record on appeal with evidence not reviewed by the court below. *See, e.g., Dickerson v. State of Alabama,* 667 F.2d 1364, 1367 (11th Cir.1982) (discretion to do so rests with court of appeal), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982).[12]

In sum, SEI's conduct violated both the district court's local rules and the Federal Rules of Appellate Procedure. Accordingly, we consider neither SEI's references to the arbitration proceedings nor the arbitrator's findings in resolving the issues presented in this direct appeal.

## CONCLUSION

The district court's judgment is, in all respects, affirmed.

NOONAN, Circuit Judge, concurring:

I concur in the opinion and judgment. However, I would award sanctions for breach of our rules. The particular violation is one of first impression, but the rules are old and well-known and should be enforced.

---

any judicial officer who may try the case until the district court has entered judgment or the case has otherwise terminated. *See* N.Dist.Cal. L.R. 500–6(d).

11. This facet of our analysis transcends the formalities of Rule 10. Under the arbitration system in question, for example, the arbitration "award" *is* filed with the clerk of the district court. Because the award is, technically speaking, "filed in the district court," its citation on appeal would not literally violate Rule 10. *See* Fed.R.App.P. 10. We clarify, however, that a party's reference to such evidence to contest the factual findings of the district court would be improper nonetheless.

12. SEI contends that the testimony of Tonry's witnesses at trial was inconsistent with their testimony before the arbitrator. We must address those purported inconsistencies, SEI argues, or risk condoning perjury in trials following similar arbitration. We disagree. The arbitration system in question allows parties to introduce "statements made by a witness at the arbitration hearing ... for impeachment" purposes at trial. N.Dist.Cal.L.R. 500–7(b). Hence, under the local rules, SEI could have introduced the purported testimonial inconsistencies during its cross-examination of Tonry's witnesses. We note that even absent that provision in the local rules, we still could not address the allegedly conflicting testimony for the first time on appeal.