Bennett NIELSEN, Plaintiff,

v.

REVCOR, INC., Defendant.

No. 89 C 20207.

United States District Court,
N.D. Illinois, W.D.

Jan. 3, 1991.

Michael Havrilesko, Rockford, Ill., for plaintiff.

Gloria M. Portela, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

Before the court is Defendant's motion for summary judgment. For the reasons set forth herein, the court denies Defendant's motion.

## BACKGROUND

On June 21, 1989, Plaintiff Bennett Nielsen filed a complaint in this court against Defendant Revcor, Inc. Plaintiff alleges a cause of action under two federal statutes, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1988) [hereinafter ADEA] and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132, 1140 (1988) [hereinafter ERISA]. Plaintiff's complaint also alleges two pendent state claims, breach of employment contract and intentional infliction of emotional distress. This court has jurisdiction over this matter, because it presents a federal question, pursuant to 28 U.S.C. § 1331 (1988).

The following facts are not in dispute, and are taken from Defendant's Rule 12($l$) statement of material facts and Plaintiff's Rule 12(m) response to it.[1] Plaintiff is a white male, born August 17, 1924. Defendant is a corporation with principal offices in Carpentersville, Illinois. Defendant employs more than twenty employees and is therefore an employer within the purview of the ADEA. On March 5, 1984, Defendant hired Plaintiff, then age 59, as Manager of Marketing and Sales. In early 1986, Defendant promoted Plaintiff to Director of Sales and Marketing. In October 1986, Defendant promoted Plaintiff to Vice–President of Marketing and Sales.

On August 5, 1988, Plaintiff was present at a weekly management meeting. Defendant's chairman, John Reichwein, Sr. (hereinafter John Sr.) was discussing a customer problem, and Plaintiff stated that John Sr. could help him prepare letters to customers. Plaintiff recalls that John Sr. then stated, "If I have to do your job for you, I don't need you. You're fired." Plaintiff answered, "Well, if I'm fired, I quit. You can go to hell." Four of the managers present at the meeting came to Plaintiff later that day and told him that they did not hear John Sr. say that Plaintiff was fired. Plaintiff told Defendant's President, John Reichwein, Jr. (hereinafter John Jr.), one of the managers who came to him, that if he wasn't fired, then he didn't quit.

1. The General Rules portion of the Local Rules require that parties file such statements once a party has filed a motion for summary judgment. N.D.Ill.Gen.R. 12($l$), 12(m).

The following statements are also taken from the parties' Rule 12(*l*) and 12(m) statements, and illustrate factual issues which are in dispute. The parties agree that Plaintiff and John Jr. met on November 7 and 9, 1988, but they disagree on the content of these conversations. Plaintiff asserts, in an affidavit attached to his Rule 12(m) statement, that on November 7, 1988, John Jr. informed Plaintiff that he had hired Ed Murzinski, age 42, to replace Plaintiff as Vice–President of Marketing and Sales, as of November 14, 1988. Plaintiff asserts that John Jr. said, after Plaintiff protested, "You're through. I have hire [sic] Eddie; he's coming in on the 14th. You're not going to be Vice President of Marketing and Sales next Monday." Plaintiff's affidavit, Plaintiff's Rule 12(m) statement, filed Aug. 10, 1990, ¶ 6.

Plaintiff contends that on November 9, 1988, John Jr. gave Plaintiff two options: 1) to continue in his current job for sixty days, at which time Murzinski would review Plaintiff's position and salary; or 2) to work as a consultant to Defendant. Plaintiff stated that both options were unacceptable to him. John Jr. told Plaintiff that he would not be a member of the management group, and that he would not be entitled to the executive bonus plan.[2] He also told Plaintiff that the National Executive Compensation Survey would be the basis for determining Plaintiff's salary after sixty days. Plaintiff responded that under this survey, his salary would be approximately half of his current salary. John Jr. replied, "[W]ell then that's what it will be, we can't afford to pay two people at vice president's salary level." Plaintiff's affidavit, Plaintiff's Rule 12(m) statement, filed Aug. 10, 1990, ¶ 15. Plaintiff contends, "Then I said if I'm through, what about a severance package. John said he never thought about it but he said, 'I'm sure something can be worked out.'" *Id.* ¶ 13.

The parties agree, as their Rule 12(*l*) and 12(m) statements reveal, that on November 10, 1988, Plaintiff received a letter from John Jr. offering him two options: 1) to work as Defendant's Marketing Consultant/Director, reporting to Murzinski, retaining his current salary and benefits, and after sixty days, Murzinski would review and determine Plaintiff's position and salary; and 2) to leave Defendant's employ immediately, receiving a severance package of salary and benefits. On November 14, 1990, Plaintiff left a message for John Jr. that he chose the second option.

Plaintiff also presents evidence of Defendant's motive in his deposition testimony of January 3, 1990. Plaintiff states that John Sr. told him, "Well, I used to believe the old-timers were the best guys. But since we've gotten Larry Brigman, he's so much better than Jessie Dye was that I'm beginning to think that maybe I was wrong.... And besides, John likes to have the younger guys around, you know. He doesn't have too many guys to go to lunch with and play all the sports and all that stuff. So he kind of likes having those guys." Plaintiff's deposition, Jan. 3, 1990, Exhibit A to Defendant's Rule 12(*l*) statement, Vol. II, at 73. John Jr. testified at his deposition that he and John Sr. jointly decided to seek a replacement for Plaintiff sometime shortly after the management meeting on August 5, 1988. John Reichwein, Jr.'s deposition, Sept. 14, 1989, attached to Plaintiff's Rule 12(m) statement, filed Aug. 10, 1990, at 14.

## DISCUSSION

This court will not grant any summary judgment motion unless all of the pleadings and supporting documents, if any, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

**2.** Plaintiff contends, in his answer brief, that ineligibility for the executive bonus plan would mean that he would lose over $10,000 per year.

Plaintiff's brief in opposition to Defendant's motion for summary judgment, filed Aug. 10, 1990, at 6.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court, however, is not required to evaluate every conceivable inference that can be drawn from evidentiary matters, but only reasonable ones. *Parker v. Federal Nat'l Mortgage Ass'n,* 741 F.2d 975, 980 (7th Cir.1984).

The gist of Defendant's motion for summary judgment is that Plaintiff voluntarily resigned from Defendant's employ, and therefore Defendant did not constructively discharge Plaintiff. Defendant also argues that Plaintiff has not shown that Defendant made working conditions so intolerable that Plaintiff's resignation was a constructive discharge.

Defendant's argument ignores the possibility that reducing an employee's salary and benefits is one way that an employer can make working conditions so intolerable that a resignation amounts to a constructive discharge. The Seventh Circuit has quite recently acknowledged this form of constructive discharge in *Zabielski v. Montgomery Ward & Co.,* 919 F.2d 1276 (7th Cir.1990). In *Zabielski,* an ADEA case, the employer demoted the plaintiff from a managerial to a sales position, and reduced his annual income from about $26,000 to about $9,600. The plaintiff resigned four months after this demotion. *Id.* at 1281. The Seventh Circuit held that the plaintiff raised a claim of constructive discharge sufficient to preclude the employer's motion for summary judgment. *Id.*

In this case, Plaintiff asserts that Defendant's President, John Jr., told him that two things would happen to his income after sixty days, if he accepted the staff position under Murzinski: 1) he would be ineligible for the executive bonus plan, which Plaintiff contends would be a loss of over $10,000 per year, and 2) his income would be cut approximately in half. This significant reduction in income can reasonably be viewed as an intolerable working condition which amounted to a constructive discharge.

Another Seventh Circuit opinion describes constructive discharge in ADEA cases somewhat differently. In *Henn v.*

*National Geographic Society,* the Seventh Circuit suggested that employees who accepted early retirement would have been constructively discharged if they could have reasonably believed that their employer would have fired them, in violation of the ADEA, if they refused the offer of early retirement. 819 F.2d 824, 830 (7th Cir.1987). In this case, Plaintiff alleges that Defendant's President told him, "You're through," and that his income would be significantly reduced if he remained in Defendant's employ. Accepting Plaintiff's allegations as true for the purpose of this motion, Plaintiff could have reasonably believed that if he did not resign, Defendant would have violated the ADEA by either firing him or demoting him in terms of salary and responsibilities. Thus, under this definition of constructive discharge, a trier of fact could reasonably infer that Defendant constructively discharged Plaintiff.

Defendant cites two Seventh Circuit cases as support for its position. Both of these cases are distinguishable from the instant case and may, in fact, be construed as refuting Defendant's argument. Defendant asserts that under the definition of constructive discharge found in *Bartman v. Allis–Chalmers Corp.,* Plaintiff's claims must fail. In *Bartman,* the court stated, "An employer constructively discharges an employee only if it '*makes* an employee's working conditions so intolerable that the employee is forced into an involuntary resignation …'" *Bartman,* 799 F.2d 311, 314 (7th Cir.1986), citing *Vaughn v. Pool Offshore Co.,* 683 F.2d 922, 926 (5th Cir.1982). The *Bartman* court emphasized that it must be employer itself, and not some other force (there, the uncertainty resulting from the imminent expiration of the pension plan) which causes the intolerable working conditions, for constructive discharge to occur. *Bartman,* 799 F.2d at 314. In the present case, Defendant's executives, and not some outside force, decided that Plaintiff's salary would be decreased to an extent which, as noted above, can be construed as intolerable. Therefore, Defendant cannot argue that *Bart-*

*man* precludes Plaintiff's claim of constructive discharge.

Defendant also argues that *Weihaupt v. American Medical Association* supports a grant of summary judgment in its favor. In *Weihaupt,* the Seventh Circuit found that the plaintiff did not present sufficient evidence that he was either actually or constructively discharged. *Weihaupt,* 874 F.2d 419, 426 (7th Cir.1989). One factor leading to that conclusion was that had the plaintiff not resigned, "he would have performed substantially the same duties as he had in the past without suffering either a loss in salary or benefits." *Id.* Here, however, Plaintiff has offered evidence that if he had not resigned, he would have performed substantially different duties, and would have suffered a significant loss in salary and benefits (the latter in losing eligibility for the executive bonus program).

Finally, summary judgment is improper here because Plaintiff has presented evidence of Defendant's motive and intent which conflicts with Defendant's evidence. In such a case, the weighing of conflicting evidence is for the trier of fact. *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir.1990). Genuine issues of material fact exist as to Plaintiff's claim of constructive discharge. Therefore, the court refuses to grant summary judgment for Defendant.

## CONCLUSION

For the reasons stated herein, the court denies Defendant's motion for summary judgment.

