Patrick H. KING, Plaintiff–Appellant,

v.

AC & R ADVERTISING; Saatchi & Saatchi Company PLC; Alvin Chereskin; Harry J. Koenig, Defendants–Appellees.

No. 94–55327.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1995.

Decided Sept. 7, 1995.

Charles F. Palmer, Perkins Coie, Los Angeles, CA, for plaintiff-appellant.

Gregory W. Homer, Anderson, Kill, Olick & Oshinsky, Washington, DC, for defendants-appellees.

Before: LAY,* BRUNETTI, and RYMER, Circuit Judges.

BRUNETTI, Circuit Judge:

Patrick King sued defendants AC & R Advertising, Inc. ("AC & R"), Alvin Chereskin, and Harry Koenig, for wrongful termination and age discrimination under California state laws. The district court dismissed King's claim against Chereskin and Koenig (as individuals) for age discrimination under the California Fair Employment and Housing Act, and granted the defendants summary judgment on King's breach of contract, age discrimination in employment, and intentional infliction of emotional distress claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

King worked as an advertising executive in Australia until 1987, when he was hired to run the West Coast operations of AC & R, a New York-based general advertising agency.

At that time, Stephen Rose, AC & R's then-Chief Executive Officer, represented to King that he eventually would be moved to New York and groomed to take over Rose's position as CEO of the entire company. King claims that he accepted Rose's offer only upon receiving a career commitment that he would not be discharged from AC & R absent malfeasance.

King's employment relationship with AC & R initially was governed by a written employment agreement dated January 1, 1988. The contract expired December 31, 1989. King then signed a letter agreement from Rose which stated that no new contract would be drawn up and that he would be "an employee at will." The letter also stated his compensation and other benefits. Despite the express language to the contrary, King claims he did not realize that the agreement made him an at-will employee.

Rose resigned from AC & R in December 1990, without offering King a chance to move to New York. Defendant Chereskin took over as CEO of the company, and defendant Koenig became AC & R's Chief Operating Officer. In January 1991, King contacted Chereskin to discuss his career at AC & R and the promises that had been made to him, but was rebuffed by Chereskin.

Chereskin then tried to renegotiate King's compensation package. In a letter dated May 29, 1991, Chereskin proposed that King's annual salary be reduced from $235,000 to $175,000, and that his bonus be changed from a fixed amount ($100,000) to a performance-based bonus (which potentially would add $160,000 or more per year to King's compensation). The letter also reiterated that King's employment was at will.

When King rejected the proposal, Chereskin fired him. After receiving a letter from King's attorney, AC & R rescinded the termination. In a letter dated July 22, 1991, AC & R offered King a revised version of the compensation proposal presented in the May 29th letter, to be effective September 1, 1991. King found these conditions intolerable, and resigned on August 29, 1991. King claims

* Hon. Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

that amidst all of these circumstances, Rose, Chereskin, and Koenig made a number of age-based remarks.

During King's tenure at AC & R, the West Coast Operations shrunk from four offices with over 120 employees to one office and about ten employees by the summer of 1991. From 1988 to 1991, the West Coast Operations lost progressively more money; AC & R as a whole posted a loss of more than $10 million in 1991.

In June 1992, King filed suit in state court for wrongful termination and age discrimination under California law. The case was properly removed to the district court, pursuant to 28 U.S.C. § 1441(a).

The district court granted defendants' motion for partial judgment on the pleadings and dismissed King's claim against Chereskin and Koenig (as individuals) for age discrimination under the California Fair Employment and Housing Act (FEHA). The court later granted the defendants summary judgment on King's remaining claims for, *inter alia,* breach of contract, age discrimination under FEHA (against AC & R), and intentional infliction of emotional distress. King timely appeals.

## II.

■ We review the district court's grant of summary judgment *de novo. Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). This court's review is governed by the same standard used by trial courts under Federal Rule of Civil Procedure 56(c): "[We] must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." *Id.* at 1130–31.

### A. Constructive Discharge

■ King's breach of contract and age discrimination claims were predicated on his alleged constructive discharge. To establish a constructive discharge under California law, King must prove that: (1) his working conditions at the time of his resignation were so intolerable or aggravated that (2) a reasonable person in King's position would have been compelled to resign, and that (3) AC & R either intentionally created or knowingly permitted the intolerable working conditions. *See Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 230, 876 P.2d 1022, 1029 (1994).

■ King argues that because constructive discharge must be determined by an objective, "reasonable person" standard, it was inappropriate for the district court to decide the issue on summary judgment. Whether conditions are so intolerable that a reasonable person would be forced to resign generally is a question of fact. *Soules v. Cadam, Inc.,* 2 Cal.App.4th 390, 3 Cal. Rptr.2d 6, 11 (1991) (affirming summary judgment when evidence was insufficient to show intolerable working conditions); *accord Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987) (reversing summary judgment in Title VII-related constructive discharge when intolerable, discriminatory conditions over a period of time created a genuine issue of fact).

■ However, we find that summary judgment was appropriate on King's constructive discharge claim because " '[his] decision to resign [was] unreasonable as a matter of law.' " *See Soules,* 3 Cal.Rptr.2d at 11 (quoting *Valdez v. City of Los Angeles,* 231 Cal.App.3d 1043, 282 Cal.Rptr. 726, 733 (1991)). As the California Supreme Court recently observed, "an employee cannot simply 'quit and sue,' claiming he or she was constructively discharged." *Turner,* 32 Cal. Rptr.2d at 227, 876 P.2d at 1026. In such instances, summary judgment is appropriate. *See id.* at 231, 876 P.2d at 1030.

■ To defeat the summary judgment, King had to show that the conditions giving rise to his resignation were extraordinary and egregious:

In order to amount to a constructive discharge, adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable. In general, single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim. Moreover, a poor

performance rating or a demotion, even when accompanied by a reduction in pay, does not by itself trigger a constructive discharge.

*Id.,* at 228, 876 P.2d at 1027 (internal quotations, citations, and footnotes omitted); *see id.* at 1026, 32 Cal.Rptr.2d at 227; *Soules,* 3 Cal.Rptr.2d at 11; *Valdez,* 282 Cal.Rptr. at 733.

To support his assertion of intolerable working conditions, King put forth the following undisputed material facts: (1) his employment status changed to that of an at-will employee; (2) his managerial responsibilities (in terms of supervisory duties and client contact) were reduced; (3) the July 22, 1991, letter from AC & R outlined a restructuring of King's compensation package that included a reduction in his base salary (to $175,000) and a potentially lucrative bonus program. We note that the parties disagree about when King's change in employment status went into effect, because King disputes the validity of the unambiguous letter agreement he signed in December 1989 that stated he was an at-will employee. However, there is no dispute about AC & R's efforts to make this change. Furthermore, although King eschews responsibility for the decisions that led to the reduction of AC & R's West Coast operations, he does not dispute the fact of AC & R's poor financial performance nationally and on the West Coast, nor does he disagree that the number of employees dropped precipitously from 1988 to 1991.

King's professional situation—and the question of whether he was subjected to unusually aggravated adverse working conditions—merit comparison to *Rochlis v. Walt Disney Co.,* 19 Cal.App.4th 201, 23 Cal. Rptr.2d 793 (1993). Rochlis, a highly paid executive at Disney Imagineering, resigned and claimed constructive discharge when his allegedly intolerable work conditions included, among other things, that he was underpaid in light of his duties and responsibilities, that he was not given sufficient authority to perform his job, and that he was unjustly criticized for the company's performance. *Id.,* 23 Cal.Rptr.2d at 798. The court found that these conditions were nothing more than the "stresses and strains characteristic of life

at the top of a major corporation." *Id.* The court concluded that, as a matter of law, these conditions did not meet the standard required for a constructive discharge, and upheld summary judgment in favor of the defendants.

■ As the California Supreme Court recently observed, "[e]very job has its frustrations, challenges, and disappointments; these inhere in the nature of work. An employee is protected from unreasonably harsh conditions, in excess of those faced by his or her co-workers. He or she is not, however, guaranteed a working environment free of stress." *Turner,* 32 Cal.Rptr.2d at 227–28, 876 P.2d at 1026–27 (internal quotation and modifications omitted). In *Turner,* the plaintiff produced evidence indicating that he (1) observed illegal acts by his co-workers which he reported to management; (2) was reassigned in retaliation; (3) was given a low performance rating. *Id.* at 232–33, 876 P.2d at 1031–32. These working conditions were arguably more egregious than King's, yet the court found that these charges, when considered together, did not give rise to a continuous pattern of harassment or aggravating conditions. *See id.* at 233, 876 P.2d at 1032.

Moreover, the *Turner* court held that a demotion in job level, even when accompanied by reduction in pay, does not constitute a constructive discharge. *Id.* at 228, 876 P.2d at 1027; *see also Gibson v. Aro Corp.,* 32 Cal.App.4th 1628, 38 Cal.Rptr.2d 882 (1995) (applying *Turner*); *accord Soules,* 3 Cal.Rptr.2d at 11 (citing *Wagner v. Sanders Assocs., Inc.,* 638 F.Supp. 742, 745 (C.D.Cal. 1986)). King mistakenly relies on *Tonry v. Security Experts, Inc.,* 20 F.3d 967 (9th Cir. 1994), in which we upheld the district court's determination, at bench trial, that the plaintiff was constructively discharged under California law when he was demoted from a management position to that of night watchman, and had his pay and benefits significantly reduced. Since our decision in *Tonry,* the California Supreme Court decided *Turner,* which now guides our application of the relevant substantive law.

In addition to *Tonry,* King relies on cases from the Fifth and Seventh Circuits that have held that a reduction in pay and respon-

sibilities can be sufficient to establish constructive discharge. *See Stephens v. C.I.T. Group/Equipment Financing, Inc.,* 955 F.2d 1023, 1027–28 (5th Cir.1992); *Zabielski v. Montgomery Ward & Co., Inc.,* 919 F.2d 1276, 1281 (7th Cir.1990); *Nielsen v. Revcor,* 770 F.Supp. 404 (N.D.Ill.1991). None of these cases was decided by the Ninth Circuit or applies California law; we find them unpersuasive and inapplicable.

■■■ Under the standard set out in *Turner* and consistent with other California case law, we find that the undisputed facts are insufficient to prove the required intolerable or aggravated work conditions. King has failed to show that, "under all the circumstances, [his] working conditions [were] so unusually adverse that a reasonable employee in [his] position would have felt compelled to resign." *Turner,* 32 Cal.Rptr.2d at 228, 876 P.2d at 1027 (internal quotation omitted). Because King's resignation was unreasonable as a matter of law, he was not constructively discharged. We therefore affirm the district court's grant of summary judgment on King's breach of contract claims[1] and his age discrimination claim.[2]

## B. Intentional Infliction of Emotional Distress

■■■ In California, one of the essential elements of a *prima facie* case of intentional infliction of emotional distress is "extreme and outrageous conduct by the defendant." *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 257 Cal.Rptr. 665, 669 (1989) (internal quotation omitted). The district court ruled that King's failure to prove this element of his *prima facie* case entitled the defendants to summary judgment as a matter of law. Because we agree with the district court that

King fails to raise a triable issue of fact with regard to the "extreme and outrageous" element, we need not address the remaining elements, which are: " '(2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress.' " *See Schneider v. TRW, Inc.,* 938 F.2d 986, 992 (9th Cir.1991) (quoting *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 233 Cal.Rptr. 308, 312 n. 7, 729 P.2d 743, 746 n. 7 (1987)).

■■■ King argues that genuine issues of material fact exist to preclude summary judgment, and claims that the following conduct constitutes "outrageous conduct" on the part of the defendants: their efforts to change his employment status and restructure his compensation; their lack of interest in King's history and role at AC & R; their firing of him after his rejection of the May 1991 proposal and the subsequent rehiring of him; their treatment of him with regard to the Foster's account; and age-related comments made by Rose, Chereskin, and Koenig.

Most of the age-related comments that King claims caused him emotional distress do not appear to have been made directly to, or about, him. For example, Rose, then in his sixties, allegedly stated at a management committee meeting: "You'll be seeing a lot less gray hair around here." He also allegedly stated that AC & R had to keep up with its clients, who were in their thirties. Rose was often heard referring to his employees as "over the hill" and "long in the tooth." Koenig and Chereskin also made statements like "Advertising is a young person's game." Through a third person, King heard that

1. On appeal, King raises the doctrine of anticipatory breach as an alternative theory upon which his breach of contract claims may be considered. We decline to consider this argument because King failed to raise it in the district court, and has "failed to present evidence of exceptional circumstances warranting an exception to the general rule that questions not raised [below] will not be considered on appeal." *See Villar v. Crowley Maritime Corp.,* 782 F.2d 1478, 1483 (9th Cir.1986); *accord Federal Sav. & Loan Ins. Corp. v. Butler,* 904 F.2d 505, 509 (9th Cir.1990). This rule of waiver is discretionary, *Telco Leasing, Inc. v. Transwestern Title Co.,* 630 F.2d 691,

693 (9th Cir.1980), but King's mere assertion that injustice will result does not suffice to compel our consideration of the issue.

2. Because we find that King cannot establish constructive discharge, we also affirm the district court's dismissal of his age discrimination claims against Chereskin and Koenig as individuals. We need not decide whether the district court erred in ruling that employees cannot be held individually liable for age discrimination under FEHA.

Chereskin didn't like him because he was overpaid and too old.

"Summary judgment is proper if a claim cannot 'reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Schneider*, 938 F.2d at 992 (quoting *Trerice v. Blue Cross of California*, 209 Cal. App.3d 878, 257 Cal.Rptr. 338, 340 (1989)). "Conduct, to be outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Schneider*, 938 F.2d at 992 (internal quotation omitted) (affirming summary judgment when incidents in which supervisor made threatening gestures and screamed at employee while criticizing her showed rudeness and insensitivity, but did not amount to outrageous conduct); *Yurick*, 257 Cal.Rptr. at 671 (summary judgment appropriate when employer's alleged conduct and discriminatory remarks, while offensive and in breach of the common standards of civility, were not so egregious to give rise to an actionable claim); *Trerice*, 257 Cal.Rptr. at 340 (finding employer's poor handling of plaintiff's termination did not qualify, as a matter of law, as outrageous conduct).

King contends that he produced sufficient evidence to show that defendants' actions amounted to outrageous conduct, and therefore summary judgment was inappropriate. Several cases upon which King relies are distinguishable on their facts because each involved, at a minimum, an employer's use of racial slurs against an employee susceptible to such slurs. *See Robinson v. Hewlett–Packard Corp.*, 183 Cal.App.3d 1108, 228 Cal. Rptr. 591, 604 (1986) (finding summary judgment inappropriate because use of racial slurs "may constitute outrageous conduct"); *Agarwal v. Johnson*, 25 Cal.3d 932, 160 Cal. Rptr. 141, 149–150, 603 P.2d 58, 66–67 (1979) (affirming jury verdict when supervisor used racial slurs, then had employee terminated for unfounded reasons); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 86 Cal.Rptr. 88, 90–91, 468 P.2d 216, 218–219 (1970) (plaintiff first subjected publicly to racial epithets, then fired abruptly). King also relies on

*Huber v. Standard Ins. Co.*, 841 F.2d 980 (9th Cir.1988), in which we reversed summary judgment because the evidence raised genuine issues of material fact regarding whether the way in which the plaintiff was terminated would have caused him emotional distress. *Id.* at 986–87. The defendant's conduct in *Huber* was far more outrageous than here: the plaintiff was actually terminated, without any warning of unsatisfactory performance, effective immediately instead of in 30 days as required by his contract, and in contrast to the company's standard practice of allowing terminated agency managers to stay on until their pensions vest. *See id.* at 987.

In the instant case, viewing the evidence in the light most favorable to King, we find that the defendants' actions, while perhaps demonstrating poor judgment and manners, were "not so extreme as to exceed all bounds of that usually tolerated in a civilized society." *See, e.g., Schneider*, 938 F.2d at 992. Even the age-related comments made by Rose and others, while offensive and perhaps discriminatory, were "not so egregiously outside the realm of civilized conduct to give rise to actionable infliction of mental distress." *See Yurick*, 257 Cal.Rptr. at 671 (finding that supervisor's repeated comments that "anyone over 40 was senile" did not amount to outrageous conduct). Because the defendants' actions did not constitute "outrageous conduct" as a matter of law, we affirm the district court's grant of summary judgment on King's intentional infliction of emotional distress claim.[3]

**AFFIRMED.**

---

**3.** We do not need to reach the defendants' alternative argument that the exclusive remedy provisions of the California Workers' Compensation Act bar King's claim for intentional infliction of emotional distress.