**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANET WHEELER, an individual, | No.    17-55560 |
| Plaintiff-Appellant, | |
| v. | D.C. No.<br>3:15-cv-02236-CAB-AGS |
| HOME DEPOT USA, INC.; DOES 1-10, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted October 22, 2019
Pasadena, California

Before:  KLEINFELD, PAEZ, and CALLAHAN, Circuit Judges.

Janet Wheeler appeals the district court's decision to grant summary

judgment on her California Fair Employment and Housing Act (FEHA) and

wrongful termination claims against her former employer, Home Depot.  We

review a grant of summary judgment de novo.  *Adcock v. Chrysler Corp.*, 166 F.3d

---

*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1290, 1292 (9th Cir. 1999). This court has jurisdiction over her appeal under 28 U.S.C. § 1291, and we vacate the judgment and remand for further proceedings.

A determination of constructive discharge is normally a factual question left to the trier of fact. *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id*. (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

Under California law, to establish a constructive discharge, "an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Scotch v. Art Inst. of Cal.-Orange Cty., Inc.,* 173 Cal. App. 4th 986, 1022 (2009) (quoting *Turner v. Anheuser-Busch, Inc*., 7 Cal. 4th 1238, 1251 (1994)). "Whether conditions were so intolerable or aggravated under that standard is usually a question of fact; however,

summary judgment against an employee on a constructive discharge claim is appropriate when, under the undisputed facts, the decision to resign was unreasonable as a matter of law." *Id*.

When evaluating whether the conditions of employment have become so intolerable as to constitute constructive discharge we consider the totality of the circumstances. *See Watson v. Nationwide Ins. Co,* 823 F.2d 360, 361 (9th Cir. 1987). An employee is constructively discharged when "looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" *Id*. (quoting *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir. 1984)).

Here the proffered evidence, taken in the light most favorable to Wheeler, raises substantial questions as to whether Home Depot created intolerable conditions that forced Wheeler to resign. After working for Home Depot for twenty years, and receiving excellent reviews, raises, and bonuses the preceding three years, Wheeler in April 2014 received a first Progressive Disciplinary Notice from her district manager. Wheeler testified that he told her that he was being pressured to ensure store managers were being held accountable, and repeatedly apologized to her for having to give her the notice. In addition, Wheeler proffered

some evidence that management sought to get rid of older managers because they had high salaries. Wheeler complained about feeling unfairly targeted to her human resources manager. After a new district manager was appointed, Wheeler received additional negative performance reviews and on July 30, 2014, received a second Progressive Disciplinary Notice.

On August 14, 2014, Wheeler's store was inspected and received all green and yellow scores. The store was again inspected on August 20, 2014 and received all green scores. Nonetheless, on August 25, 2014, the human resources manager issued Wheeler a Manager's Note stating that there had been no improvement in the past four months. Wheeler was also notified that her store had been ranked in the top five of the district.

On the same day, the district operations officer, Alex Taylor, sent an email to all the store managers in his district outlining the issues Home Depot had been having with Wheeler and noting that she "will be receiving her Final [write up] this week[.]" Two minutes later Taylor sent an email asking that his prior email be deleted, and fourteen minutes later he sent another email to the same recipients apologizing for sending an email that was not intended for them and that contained privileged information.

Three days later the human resources manager met with Wheeler and during the course of the meeting asked her, off the record, whether she knew anybody who could hire her. Wheeler interpreted the comment to indicate that she was being targeted for termination. Wheeler resigned on August 29, 2014.

Home Depot asserts that Taylor's email was sent by accident. However, a jury would not be required to accept Home Depot's explanation and could well find that the broadcasting of Wheeler's disciplinary issues to all the store managers was intentional and had a devastating impact on her credibility and ability to work with her colleagues. In light of the totality of the circumstances, including Wheeler's indications of age and gender discrimination, her past excellent performance reviews, and the inspections of her store, we cannot conclude that a reasonable jury could not find that Home Depot had created conditions that were so intolerable that a reasonable person in Wheeler's position would have felt compelled to resign. *See Poland*, 494 F.3d at 1184.

Accordingly, because Wheeler has raised triable issues of material fact on the constructive discharge element of her claims, the district court's grant of summary judgment on her FEHA claims and her common law wrongful

5

termination claim is vacated.  We remand to the district court for further consideration in light of this disposition.

**VACATED AND REMANDED.**

*Wheeler v. Home Depot USA, Inc., et al No. 17-55560*

Kleinfeld, Senior Circuit Judge, dissenting:

I respectfully dissent.

The question presented on which we resolve the case is not whether Wheeler was treated unfairly, or discriminated against on account of her age. We address only "constructive discharge," because that is the issue in dispute.

Since Wheeler was not fired or otherwise disciplined, the question before us is whether there was evidence from which a jury could conclude that Home Depot "intentionally created or knowingly permitted" working conditions that "were so intolerable or aggravated" that when she quit, a reasonable employer would realize that a reasonable person in her position would feel compelled to resign.[1] The mediocre reviews she began receiving do not amount to constructive discharge, because "mere oral or written criticism of an employee . . . does not meet the definition of an adverse employment action under FEHA."[2] This case hinges on the email sent to all store managers in the district saying that she was going to

---

[1] *King v. AC & R Advert.*, 65 F.3d 764, 767 (9th Cir. 1995).

[2] *Akers v. Cty. of San Diego*, 116 Cal. Rptr. 2d 602, 613 (Cal. Ct. App. 2002).

receive a final write up, that is, that she was about to be fired. This certainly would be embarrassing or humiliating for any employee, and arguably it does not fall within the category of "mere oral or written criticism,"[3] or at the least a jury could find that it did not. Assuming that Home Depot by this email did indeed create intolerable working conditions such that an employee would be compelled to resign, whether that amounts to constructive discharge depends on whether the employer "intentionally" created them or "knowingly permitted" them.[4]

There is no evidence in the record showing that the humiliating email was sent to all store managers intentionally or that Home Depot chose to permit it to be sent to all store managers. The district operations officer who sent it retracted it immediately "2 minutes after sending it." And 14 minutes later, he retracted it again, apologizing for sending it. And subsequently, he was disciplined for having sent it. That is quite a lot of evidence that it was so sent accidentally, not intentionally, and that Home Depot, far from permitting the email to be sent to all store managers, punished the sending.

_____

[3] *Id.*

[4] *Casenas v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101, 114–15 (Cal. Ct. App. 1997).

There was nothing unreasonable about Wheeler inferring that she was likely soon to be fired, and quitting before that happened.  But quitting when firing seems likely is just not the same thing as being fired.  People do it precisely to avoid being fired, thereby avoiding the black mark of dismissal on their resumes.  After all, "[t]he proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee."[5]

---

[5] *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246 (Cal. 1994).